**BMS** IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA



| | |
|---|---|
| EDWARD BRACEY<br><br>Petitioner,<br><br>v.<br><br>JEFFREY BEARD, Commissioner,<br>Pennsylvania Department of Corrections;<br>DONALD T. VAUGHN, Superintendent of the<br>State Correctional Institution at Graterford; and<br>JOSEPH P. MAZURKIEWICZ, Superintendent<br>of the State Correctional Institution at<br>Rockview,<br><br>Respondents. | CIVIL ACTION<br><br>No. 02- CV-3685<br><br><br>THIS IS A CAPITAL CASE<br><br>EXECUTION IS SCHEDULED<br>FOR JULY 11, 2002<br><br>FILED<br>JUN 10 2002<br>MICHAEL E. KUNZ, Clerk<br>By ___ Dep. Clerk |

### MOTION FOR APPOINTMENT OF COUNSEL
### AND STAY OF EXECUTION
### AND REQUEST FOR *IN FORMA PAUPERIS* STATUS

Petitioner Edward Bracey, an indigent death-sentenced inmate who has never been afforded federal review of his conviction and death sentence, seeks appointment of federal habeas corpus counsel pursuant to <u>McFarland v. Scott</u>, 512 U.S. 849 (1994) and 21 U.S.C. § 848(q)(4), leave to proceed *in forma pauperis*, and a stay of execution pursuant to <u>McFarland</u> and 28 U.S.C. § 2251.

In support of this motion, Petitioner avers as follows:

### INTRODUCTION

1. Petitioner, Edward Bracey, is in the custody of the Commonwealth of Pennsylvania in the State Correctional Institution -- Graterford, under sentence of death.

2. Respondent Jeffrey Beard is Commissioner of the Pennsylvania Department of Corrections.

3. Respondent Donald T. Vaughn is Superintendent of the State Correctional Institution -- Graterford and currently maintains custody of Petitioner.

4. Respondent Joseph P. Mazurkiewicz is Superintendent of the State Correctional Institution -- Rockview and is responsible for supervising executions in the Commonwealth of Pennsylvania.

5. On December 31, 2002, the Pennsylvania Supreme Court denied Mr. Bracey's appeal from the denial of relief under the Post Conviction Relief Act. Commonwealth v. Bracey, 2001 WL 1663949 (Pa. Dec. 31, 2002).[1] Mr. Bracey timely filed a *Motion for Reconsideration*, which the Pennsylvania Supreme Court denied on April 18, 2002. The denial of the motion for reconsideration had the effect of lifting stay of execution that had been in effect during the litigation of Mr. Bracey's PCRA proceedings.

6. On May 8, 2002, the Pennsylvania Supreme Court also denied Mr. Bracey's *Motion for a New Trial Based on Newly Discovered Evidence, Petition for Habeas Corpus Relief Pursuant to Article I, Section 14 of the Pennsylvania Constitution and Statutory Post-Conviction Relief Under 42 Pa.C.S. § 9654 et seq.*, which had been pending since March 11, 1999.

7. Pursuant to 61 Pa. C.S. § 3002, Governor Schweiker was statutorily required to issue a death warrant within thirty days of receiving notice of the expiration of Mr. Bracey's prior stay of execution. On May 17, 2002, Governor Schweiker signed a death warrant,

---

[1] During the pendency of the motion for reconsideration, the Court withdrew the opinion from the *Atlantic Reporter*. The decision does not currently have an official reporter citation.

2

scheduling Mr. Bracey's execution for July 11, 2002.

8. As described more fully below, Mr. Bracey is indigent and unrepresented, and has never been afforded any federal review of his conviction and death sentence. Mr. Bracey wishes to file a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of that conviction and sentence.

9. Mr. Bracey is entitled to the appointment of counsel pursuant to <u>McFarland v. Scott</u>, 512 U.S. 849 (1994) and 21 U.S.C. § 848(q)(4), and has asked to be represented by the Capital Habeas Corpus Unit of the Philadelphia Federal Defender's office, which is authorized to represent indigent death row inmates in capital habeas corpus proceedings in the United States District Court for the Eastern District of Pennsylvania.

10. Mr. Bracey also requests that this Court enter a stay of execution pursuant to <u>McFarland</u> and 28 U.S.C. § 2251. No counsel could properly prepare and present a petition under the shadow of a death warrant and the artificially abbreviated period of time available to pursue his remedies under the limits set by the warrant. Accordingly, Mr. Bracey is entitled to a stay of execution to vindicate his right to full federal review of his to-be-filed, first habeas corpus petition.

## PROCEDURAL HISTORY

11. Petitioner was granted *in forma pauperis* status throughout the state court proceedings in this case for capital murder and related charges in the Philadelphia County Court of Common Pleas. <u>Commonwealth v. Bracey</u>, June Term, 1991, Nos. 3282-3288 (Philadelphia C.P., Crim. Div.). Petitioner was found guilty of first degree murder and related charges on March 3, 1992, and sentenced to death later that same day, following a cursory sentencing

3

hearing. Post-verdict motions were denied, and he was formally sentenced to death on March 4, 1992.

12.  The Pennsylvania Supreme Court affirmed Mr. Bracey's convictions and sentence on direct appeal on July 21, 1995. Commonwealth v. Bracey, 541 Pa. 322, 662 A.2d 1062 (1995). Mr. Bracey presented, and therefore exhausted, a number of federal constitutional issues in the course of his direct appeal, and other federal constitutional issues were exhausted by operation of Pennsylvania's mandatory independent appellate review of the record of a capital case.[2]

13.  Mr. Bracey timely requested an extension of time to present his petition for writ of certiorari to the United States Supreme Court, and on September 26, 1995, the Court extended his deadline to seek certiorari until December 18, 1995. However, on November 13, 1995 -- before his petition for certiorari was even due and before his conviction and sentence had become final as a matter of law -- Governor Thomas Ridge signed a premature death warrant scheduling Mr. Bracey to be executed on December 5, 1995.

14.  As a result of that premature death warrant, Mr. Bracey sought a stay of execution from the Pennsylvania Supreme Court. On December 1, 1995, that court stayed his execution pending disposition of the petition for certiorari. Commonwealth v. Bracey, 543 Pa. 15, 669 A.2d 882 (1995).

15.  Mr. Bracey timely filed his petition for certiorari on December 14, 1995. The United States Supreme Court denied certiorari on April 1, 1996, declining to review Mr.

---

[2] E.g., Laird v. Horn, 159 F. Supp. 2d 58, 73 (E.D. Pa. 2001); Bronshtein v. Horn, 2001 WL 767593, *10 n.19 (E.D. Pa. July 5, 2001).

Bracey's case at that time. <u>Bracey v. Pennsylvania</u>, 517 U.S. 1122 (1996).

16. Although Mr. Bracey had one year from the denial of certiorari to initiate post-conviction review of his case and was a member of the putative class of death row prisoners involved in <u>Death Row Prisoners v. Ridge, et al.</u>, No. 96-CV- 3179 (E.D. Pa.), which had been filed on April 23, 1996, Governor Thomas Ridge signed a second premature death warrant directed at Mr. Bracey on April 26, 1996, this time scheduling his execution for the week of May 12, 1996.

17. Because of the uncertainties attendant to the newly enacted state post-conviction restrictions on the availability of stays of execution, Mr. Bracey -- through the former death penalty resource center -- filed an application for stay of execution and request for appointment of federal habeas corpus counsel in this Court.[3] This Court (Hon. Marvin Katz) heard argument and continued the matter to afford the Court of Common Pleas the opportunity to rule on Mr. Bracey's application for stay of execution. Mr. Bracey filed a motion for stay of execution in the Philadelphia Court of Common Pleas, which issued a stay upon the filing of a *pro se* PCRA petition on May 10, 1996.

18. Petitioner filed a counseled *Petition for Habeas Corpus Relief under Article I, Section 14 of the Pennsylvania Constitution and for Statutory Post-Conviction Relief under the Post Conviction Relief Act* on November 22, 1996. This petition raised numerous additional claims of federal constitutional error. The PCRA court granted an evidentiary hearing limited to

---

[3] Amended 42 Pa. C.S. § 9545(a) ("Jurisdiction"), effective January 16, 1996, provided that "No [Pennsylvania] court shall have authority to entertain a request for any form of relief in anticipation of the filing of a petition under this subchapter."

5

Mr. Bracey's claim of ineffective assistance of sentencing-stage counsel,[4] and dismissed all other claims without a hearing. Following post-hearing briefing, the Philadelphia Court of Common Pleas (Jones, J.) denied relief on July 28, 1998.

19.     Mr. Bracey timely appealed to the Pennsylvania Supreme Court, exhausting all of the federal constitutional issues presented in his PCRA petition. On or about March 11, 1999, Mr. Bracey also filed a *Motion for New Trial Based on Newly Discovered Evidence, Petition For Habeas Corpus Relief Pursuant to Article I, Section 14 of the Pennsylvania Constitution and Statutory Post-Conviction Relief Under 42 Pa. C.S. § 9542 et seq. and Motion for Remand to the Trial Court for Evidentiary Hearing*, presenting new evidence of racial discrimination in the administration of the death penalty in Philadelphia and in the jury selection process. As recounted above, the Pennsylvania Supreme Court denied his appeal on December 31, 2001, Commonwealth v. Bracey, 2001 WL 1663949 (Pa. Dec. 31, 2002); denied reargument on April 18, 2002; and denied his *Motion for a New Trial* on May 8, 2002.

20.     On May 17, 2002, the Commonwealth of Pennsylvania issued yet another legally premature death warrant, this time scheduling Mr. Bracey's execution for July 11, 2002. By way of this pleading, Mr. Bracey initiates federal habeas proceedings, requests appointment of counsel, and seeks the stay of execution without which the Commonwealth would forever and unlawfully deny him federal review of his conviction and death sentence.

## ENTITLEMENT TO RELIEF

### A.     Petitioner is Indigent

---

[4] That hearing was conducted from April 20 to April 28, 1998.

21. Edward Bracey is "financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services" in this habeas corpus matter. 21 U.S.C. § 848 (q)(4)(B). He has proceeded *in forma pauperis* at all prior stages of this case. He was represented in the Philadelphia Court of Common Pleas at trial by appointed counsel William J. Perrone,[5] and by appointed counsel Robert Brett Dunham and Billy H. Nolas throughout state post-conviction proceedings. Mr. Bracey is indigent and requires the appointment of capital habeas counsel.

22. Mr. Bracey has been continuously incarcerated by the Commonwealth of Pennsylvania since his arrest in this case, and has been without gainful employment during that time. He has no other sources of personal income.

**B.   Petitioner is Entitled to Appointment of Federal Habeas Corpus Counsel**

23. Edward Bracey is indigent and wants to file a federal habeas corpus petition pursuant to 28 U.S.C. § 2254. He has not previously filed a federal habeas corpus petition. He cannot do so without the appointment of qualified counsel to investigate, prepare, and present the claims that are available to him in federal habeas corpus.

16. 21 U.S.C. § 848 (q)(4)(B) states:

In any post-conviction proceedings under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigate, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8) and (9).

17. This statute grants a qualified applicant -- i.e., a first time, indigent, capital habeas

---

[5] Mr. Perrone was subsequently disbarred for fraudulent billing practices.

7

corpus petitioner -- "a mandatory right to qualified legal counsel." McFarland v. Scott, 512 U.S. 849, 854 (1994); see also *Guide to Judiciary Policies and Procedures*, Vol. VII, Ch. VI, § 6.01A.2 ("A financially eligible person seeking to vacate or set aside a death sentence in proceedings under 28 U.S.C. § 2254, is *entitled* to appointment of one or more qualified attorneys." (emphasis in original)). This right is triggered by the petitioner's motion requesting habeas counsel, which initiates his habeas corpus proceedings even before a substantive habeas petition is filed. McFarland, 512 U.S. at 856-57 ("We therefore conclude that a 'post conviction proceeding' within the meaning of § 848(q)(4)(B) is commenced by the filing of a death row defendant's motion requesting the appointment of counsel for his habeas corpus proceeding.").

24. By way of this submission, Petitioner has invoked the jurisdiction of this Court and initiates habeas corpus proceedings.[6]

25. Petitioner is entitled to the appointment of habeas corpus counsel for these capital habeas corpus proceedings.

### C. The Capital Habeas Corpus Unit Should be Appointed to Represent Mr. Bracey

26. Edward Bracey has requested the appointment of the Defender Association of Philadelphia - Federal Court Division to represent him in these habeas corpus proceedings through its Capital Habeas Corpus Unit ("Habeas Unit" or "Unit").

27. The Habeas Unit is recognized by the Administrative Office of the United States

---

[6] Although exhaustion of federal claims "is not jurisdictional, but a matter of comity," Story v. Kindt, 26 F.3d 402, 405 (3d Cir. 1994); Granberry v. Greer, 481 U.S. 129, 131 (1987); Rose v. Lundy, 455 U.S. 509, 515-20 (1982), Petitioner has exhausted federal claims in both the direct appeal and state post-conviction process.

Courts as a Community Defender Organization pursuant to 18 U.S.C. § 3006A of the Criminal Justice Act. See Addendum to the Plan for the Implementation of the Criminal Justice Act of 1964, As Amended, 18 U.S.C. § 3006A, of the United States District Courts for the Eastern, Middle, and Western Districts of Pennsylvania. Accordingly, the Unit receives a sustaining grant from the Administrative Office of the United States Courts for the purpose of providing representation to Pennsylvania's death-sentenced prisoners in federal habeas corpus proceedings, and is authorized to be appointed, in all three of Pennsylvania's federal district courts. Because of its sustaining grant, the Capital Habeas Corpus Unit will not seek costs, litigation or expert expenses, or attorneys fees relating to its appointment in this case as counsel to Mr. Bracey.

28.     The Capital Habeas Corpus Unit possesses special expertise in capital jurisprudence.[7] The Unit's lawyers have authored a variety of death-penalty articles and training

---

[7] Even apart from the CJA plan's authorization to appoint the Habeas Unit in capital habeas corpus cases in this district, undersigned counsel individually also meet the qualification standards for the appointment of capital habeas corpus counsel as set forth in 21 U.S.C. § 848(q)(4).

Robert Brett Dunham has been an assistant federal defender in the Capital Habeas Corpus Unit and the Unit's Director of Training since June 1999. From July 1994 until June 1999, he was Executive Director of the Center for Legal Education, Advocacy & Defense Assistance, Pennsylvania's former death penalty resource center that -- like the Capital Habeas Corpus Unit today -- was recognized as a community defender organization for purposes of handling capital habeas corpus litigation under the Criminal Justice Act implementation plans for each of Pennsylvania's district courts. In that capacity, and now as Director of Training, Mr. Dunham provides continuing legal education and other formal training for capital attorneys throughout the United States; is called on to provide case specific assistance by Pennsylvania capital attorneys; and prepares and maintains resource materials for capital attorneys. He has represented capital defendants on direct appeal and at all levels of Pennsylvania's state and federal post-conviction courts, including the Third Circuit and all three federal District Courts.

Billy Nolas was the Litigation Director of the Center for Legal Education, Advocacy & Defense Assistance for five years and has been an assistant federal defender in the Capital

9

materials, and have served on the faculties of death-penalty and/or habeas corpus continuing legal education training seminars for numerous organizations and entities including, *inter alia*, the United States Court of Appeals for the Third Circuit; the Administrative Office of the United States Courts Habeas Corpus Training and Assistance Project; the Federal Judicial Center; the National Institute for Trial Advocacy; the NAACP Legal Defense & Educational Fund; the American Bar Association Death Penalty Representation Project; the Federal Defender for the Middle District of Pennsylvania; the National Association of Criminal Defense Lawyers; the Pennsylvania Association of Criminal Defense Lawyers; the Public Defender Association of Pennsylvania; the Pennsylvania Bar Institute; the Penn State University Dickinson School of Law; the University of Pittsburgh Law School; and the New Jersey Public Defender System. Its lawyers also have served as members of the Third Circuit's Task Force on Death Penalty Litigation, on the Board of Directors of the Pennsylvania Association of Criminal Defense Lawyers; and on the Advisory Committee of the Dickinson School of Law Death Penalty Post-Conviction Training Program.

  29. The United States Court of Appeals for the Third Circuit routinely appoints the Unit to represent Pennsylvania capital habeas corpus petitioners in proceedings in that court. Similarly, the Unit's lawyers routinely represent capital habeas corpus petitioners in each of Pennsylvania's federal district courts.

---

Habeas Unit since 1999. In addition, he has represented death-row inmates for the past fifteen years in four federal circuit courts, and has argued death penalty cases before the state and federal courts at every level in Pennsylvania. He has been appointed to represent indigent capital petitioners in capital habeas matters in Pennsylvania's federal district courts and in the United States Court of Appeals for the Third Circuit in numerous cases.

30. A partial list of the cases in which undersigned counsel have represented or are representing Pennsylvania death-row inmates in habeas corpus proceedings in the Third Circuit includes, *inter alia*: Hardcastle v. Horn, No. 01-9006 (3d Cir.); Rompilla v. Horn, Nos. 00-9005 & 00-9006 (3d Cir.); Miller v. Horn, No. 00-9011 (3d Cir.); Heidnik v. Horn, No. 99-9004 (3d Cir.); Appel v. Horn, No. 99-9003 (3d Cir.); Jermyn v. Horn, Nos. 98-9012 & 98-9013 (3d Cir.); *In re* Heidnik, No. 97-9000 (3d Cir.); Smith v. Horn, Nos. 96-9001 & 96-9002 (3d Cir.); Frey v. Fulcomer, No. 95-9007 (3d Cir.); and Duffey v. Lehman, No. 94-9003 (3d Cir.).

31. A partial list of other cases in which undersigned counsel have represented or are representing Pennsylvania death-row inmates in habeas corpus proceedings in this District includes, *inter alia*: Laird v. Horn, No. 99-CV-2311 (E.D. Pa.); Whitney v. Horn, No. 99-CV-1993 (E.D. Pa.); Henry v. Horn, No. 98-2187 (E.D. Pa.); Morris v. Horn, No. 97-6635 (E.D. Pa.); Fahy v. Horn, No. 97-CV-2846 (E.D. Pa); Baker v. Horn, No. 96-0037 (E.D. Pa.); Peterkin v. Horn, No. 95-CV-3989 (E.D. Pa.); and Morales v. Vaughn, No. 90-CV-5105 (E.D. Pa.).

32. Undersigned counsel are admitted to practice in the United States Court of Appeals for the Third Circuit and in this District.

33. Finally, because undersigned counsel represented Mr. Bracey in state post-conviction proceedings, they are in a position to develop a federal pleading in support of his claims within a reasonable amount of time.

**D. This Court Should Grant a Stay of Execution to Permit Preparation of an Appropriate Habeas Corpus Petition.**

34. When a death warrant prematurely issues prior to a capital defendant's statutory deadline for the initiation of habeas corpus proceedings, capital habeas corpus petitioners are

improperly placed in the position of having to investigate and litigate their claims under the restrictive and artificially pressured conditions created by the issuance of a legally premature death warrant.

35. To avoid the improper interference by the Commonwealth in the preparation, presentation, and litigation of the habeas petition in this case, Petitioner requests that this Court enter a stay of execution to permit counsel to adequately investigate and prepare his petition.

36. Capital defendants have a right to a meaningfully counseled opportunity to prepare and litigate a habeas corpus petition. Lonchar v. Thomas, 517 U.S. 314 (1996); Anderson v. Buell, 516 U.S. 1100 (1996) (per curiam); McFarland v. Scott, 512 U.S. 849 (1994); 21 U.S.C. § 848(q)(4)(B).[8] Congress has enacted a one-year statute of limitations, commencing with the completion of direct review, in which to file the petition. 28 U.S.C. § 2244(d) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.").

37. Notwithstanding the one-year deadline, the Commonwealth of Pennsylvania has, under color of state law, see 42 Pa. C.S. § 9711(j), as amended by Act 1998-80, § 2(A), burdened the federal right to habeas corpus review on more than 200 separate occasions with the issuance of legally premature death warrants.[9]

---

[8] See also Cross v. Horn, Civ. A. No. 95-614 (W.D. Pa. Apr. 25, 1995); Griffin v. Horn, 1995 WL 296198 (E.D. Pa. May 12, 1995); Smith v. Horn, Civ. A. No. 95-3671 (E.D. Pa. June 30, 1995); Christy v. Horn, Civ. A. No. 96-37J (W.D. Pa. Feb. 21, 1996); and Banks v. Horn, No. 4:CV-96-0294 (M.D. Pa. Feb. 22, 1996)).

[9] 218 of the 219 death warrants signed by former Governor Ridge and all five of the death warrants signed to date by Governor Schweiker have been directed at inmates prior to the adjudication of an initial habeas corpus petition.

38. Federal habeas corpus litigation requires time for counsel to appropriately investigate and develop the material facts of the case prior to filing a petition. It is long established that habeas corpus is not simply an appellate proceeding, but rather an original civil action in a federal court. See, e.g., Browder v. Director, Illinois Dept. of Corrections, 434 U.S. 257, 269 (1978); Neely v. United States, 546 F.2d 1059, 1065 (3d Cir. 1976). A proper, counseled capital habeas petition can be prepared only after counsel has both reviewed the existing record and conducted an exhaustive extra-record investigation of the case. Given the complexity of capital litigation and the time required to properly litigate such cases, counsel needs -- and is entitled to -- time to meaningfully prepare. See, e.g., Riley v. Taylor, 62 F.3d 86 (3d Cir. 1995) (district court abused discretion when it denied habeas counsel six months to properly prepare and amend capital habeas corpus petition). The United States Court of Appeals for the Third Circuit has made clear that it "would never knowingly permit [a petitioner's] execution while his federal constitutional claims are being litigated." Christy v. Horn, 115 F.3d 201, 207 (3d Cir. 1997).

39. By the same token, the Commonwealth may not execute an individual while counsel is reviewing the case and preparing to file a petition raising federal constitutional claims. Federal law mandates the appointment of counsel who will provide meaningful assistance in the preparation and litigation of an initial habeas corpus petition. McFarland v. Scott, 512 U.S. 849, 854 (1994) (habeas petitioner has "a mandatory right to qualified legal counsel"); 21 U.S.C. § 848(q). A federal district court would not attempt to deny a petitioner this right by refusing to appoint qualified counsel, and "it would abuse its discretion by attempting to achieve the same result indirectly by denying a stay." Lonchar v. Thomas, 517 U.S. 314, 320 (1996); 28 U.S.C.

§ 2251. As the Supreme Court explained in McFarland, 512 U.S. at 858 (quoting Barefoot v. Estelle, 463 U.S. 880, 889 (1983)):

> the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims. Where this opportunity is not afforded, "[a]pproving the execution of a defendant before his [petition] is decided on the merits would clearly be improper."

This is especially so in states such as Pennsylvania that utilize "a system of review that employs artificial execution dates as a catalyst" and in which -- as a consequence -- "prisoners often cannot obtain qualified counsel until execution is imminent." Lonchar, 517 U.S. at 331.

40. Obviously, the execution of a defendant who has initiated habeas corpus review but has not had an opportunity for his habeas claims to be adjudicated violates his federal statutory right to such review, and would suspend the writ of habeas corpus in his case in violation of the federal constitution. As a corollary, the issuance of a legally premature death warrant that would deny a capital defendant legal review of his conviction and sentence that he has initiated and to which he is entitled can serve no legitimate penological purpose.[10]

---

[10] The issuance of a premature death warrant that serves no legitimate penological purpose constitutes cruel and unusual punishment in violation of the Eighth Amendment, and cruel, inhuman, and degrading treatment or punishment in violation of the United States' international human rights obligations, see International Covenant on Civil and Political Rights, Art. 7, Dec. 19, 1966, 999 U.N.T.S. 171, 175 (prohibition against "cruel, inhuman or degrading treatment or punishment"), ratified Apr. 2, 1992, 138 Cong. Rec. S4781, S4783-4 (Apr. 2, 1992 daily ed.); Universal Declaration of Human Rights, Art. 5, G.A. Res. 217A(III), U.N. GAOR, 3d Sess., Supp. No. 1, U.N. Doc. A/810 (1948) ("no one shall be subjected to . . . cruel, inhuman or degrading treatment or punishment"); Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Art. 16, Dec. 10, 1984, 23 I.L.M. 1027, 1031 (1984), as modified, 24 I.L.M. 535 (1985), ratified July 19, 1990, 136 Cong. Rec. S10091, S10093 (July 19, 1990); American Convention on Human Rights, Art. 5(2), 9 I.L.M. 673, 676 (Nov. 22, 1969); European Convention for the Protection of Human Rights and Fundamental Freedoms, Art. 3, 213 U.N.T.S. 222, 224 (Nov. 4, 1950); and African Charter on Human and Peoples' Rights, Art. 5, 21 I.L.M. 58, 60 (June 27, 1981), as well as customary international human rights norms, e.g.,

41.     Petitioner has not previously filed a federal petition for habeas corpus relief in this or any other court. He is entitled to a stay of execution to permit him to do so and to avoid state interference in the preparation and litigation of his petition for writ of habeas corpus.

### E.   Counsel Must Be Provided Adequate Time to Prepare a Habeas Petition, and Urges That the Court Grant Petitioner 120 Days.

42.     Once a stay of execution is granted and counsel is appointed, counsel will need a reasonable amount of time to identify the status under 28 U.S.C. § 2254 of the issues presented in the state court proceedings, conduct additional investigation and legal research, and prepare a meaningful and professionally responsible petition.

43.     The Congress of the United States, in enacting a one-year statute of limitations, 28 U.S.C. § 2244(d), has determined that one year is a reasonable amount of time to file a habeas corpus petition.

44.     In addition, the United States Court of Appeals for the Third Circuit has held it to be an abuse of discretion where a district court denied new habeas corpus counsel six months to *amend* an already filed capital habeas corpus petition, citing the "incomplete state court records and the complexity of the case," even though state court counsel who had filed the original habeas petition was remaining in the case in a support capacity. Riley v. Taylor, 62 F.3d 86 (3d Cir. 1995).[11]

---

Filartega v. Pena-Irala, 630 F.2d 876 (2d Cir. 1980).

[11] In Riley, the parties had briefed the issues raised in the initial petition and Petitioner moved to substitute new counsel in the case. At that time, prior counsel explained to the court that he "lacked the time and resources to conduct an adequate investigation of Riley's claims." The court granted new counsel three months to file a reply brief in the case, but stated that it expected that an amended petition would be filed. Id. at 89. Several weeks prior to the deadline

45. The complexity of capital habeas corpus litigation is beyond dispute. See, e.g., 21 U.S.C. § 848(q)(4)(B)(7) (acknowledging "the unique and complex nature" of capital habeas litigation); McFarland v. Scott, 512 U.S. at 856-57 ("this Court's death penalty jurisprudence unquestionably is difficult even for a trained lawyer to master" (quoting Murray v. Giarratano, 492 U.S. 1, 28 (1989)).

46. Habeas counsel must research and evaluate all of the available federal claims for purposes of this, Petitioner's first actual petition, before presenting a petition to this Court. This is so because the feasibility of a successive petition is quite circumscribed under 28 U.S.C. § 2244. The first petition (such as the one here) must be prepared with great care, thorough research and careful analysis of all potential claims that could be raised on Petitioner's behalf. Against this backdrop, a request for 180 days to prepare this petition (per Riley) would easily be reasonable.

47. That having been said, the Habeas Unit has had prior involvement in Mr. Bracey's case that will likely reduce the amount of time necessary to prepare and file a petition in this case. As mentioned earlier, Mr. Dunham and Mr. Nolas were appointed to represent Mr. Bracey in post-conviction proceedings in this case. Attorneys Ellen Berkowitz and James Moreno, both of whom are now in the Capital Habeas Unit, also assisted in Mr. Bracey's post-conviction representation before the trial and appellate court.

48. In light of the foregoing, Mr. Bracey respectfully requests 120 days from the

---

for the reply brief, new counsel explained that it had spent over 700 hours preparing the case, but needed an additional 750-800 hours to investigate the case. The District Court denied counsel's request for a six-month extension to file the amendments to the habeas petition.

appointment of the Capital Habeas Unit as his habeas counsel to prepare and file a federal habeas corpus petition in this case.

## PRAYER FOR RELIEF

ACCORDINGLY, Petitioner respectfully requests that the Court:

1) Stay Petitioner's execution;

2) Grant Petitioner permission to proceed *in forma pauperis*;

3) Appoint the Defender Association of Philadelphia, Federal Court Division, Capital Habeas Unit, to represent Petitioner in these proceedings;

4) Grant 120 days for the filing of the petition for writ of habeas corpus.

(A proposed order accompanies this request).

Respectfully submitted,

_____
ROBERT BRETT DUNHAM
Pa. Bar No. 56422
BILLY H. NOLAS
Pa. Bar No. 83177
Defender Association of Philadelphia
Federal Court Division
Capital Habeas Corpus Unit
The Curtis Center, Suite 545-W
Independence Square West
Philadelphia, PA 19106
215-928-0520

Dated:  June 7, 2002

17

## CERTIFICATE OF SERVICE

I, Robert Brett Dunham, hereby certify that on this date, I caused the foregoing *Motion for Appointment of Counsel and Stay of Execution under 28 U.S.C. § 2251 and* <u>McFarland v. Scott</u>, *and Request for in Forma Pauperis Status* to be served on the following person at the location and in the manner indicated below:

<u>VIA FIRST-CLASS MAIL</u>

Thomas Dolgenos, Esq.
Assistant District Attorney
Office of the Philadelphia County District Attorney
1421 Arch Street
Philadelphia, PA 19107

_____
Robert Brett Dunham

Dated: June 10, 2002

[FILED JUN 10 2002 MICHAEL E. KUNZ, Clerk, By ___ Dep. Clerk]