IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD BRACEY, | : | |
| | : | |
| Petitioner, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 02-3685 |
| | : | |
| JEFFREY BEARD, Commissioner, | : | (CAPITAL CASE) |
| Pennsylvania Department of Corrections; | : | |
| DONALD T. VAUGHN, Superintendent of | : | |
| the State Correctional Institution at | : | |
| Graterford, and JOSEPH P. | : | |
| MAZURKIEWICZ, Superintendent of the | : | |
| State Correctional Institution at Rockview, | : | (Hon. Berle M. Schiller) |
| | : | |
| Respondents. | : | |
| | : | |

SUPPLEMENT TO PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, EDWARD BRACEY, through undersigned counsel, hereby files this supplement

to his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and in support thereof avers

as follows:[1]

XV.  **PETITIONER'S DEATH SENTENCE VIOLATED THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS BECAUSE HIS SENTENCING JURY WAS NEVER INSTRUCTED THAT, IF SENTENCED TO LIFE, MR. BRACEY WOULD BE STATUTORILY INELIGIBLE FOR PAROLE.**

437.    All other allegations and facts contained in the habeas petition, its attachments, and

---

[1] The claims submitted herein were inadvertently omitted from the Petition during the editing process. There is no prejudice to Respondents from this supplement being filed. All emphasis in this petition is supplied unless otherwise indicated.

1

this supplement are incorporated as if fully set forth herein.

438.    The trial court Petitioner's capital sentencing, in violation of Petitioner's constitutional right to due process and right to be free from cruel and unusual punishment as guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. As detailed below, the trial court failed to instruct the jury that if sentenced to life imprisonment, Petitioner would be statutorily ineligible for parole.

439.    The state court adjudication resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in state court or was the product of proceedings in which the state courts prevented Petitioner from developing the facts. Additionally, relief is appropriate because the state court decision that involved an unreasonable application of clearly established federal law and was contrary to that law. See 28 U.S.C. § 2254(d).

440.    Edward Bracey was sentenced to death by a jury that -- even after the questions of parole and future dangerousness had been injected into his case -- was never informed that, if it chose to sentence him to life in prison, he would not be eligible for parole. The absence of such an instruction produced a death sentence imposed by jurors who erroneously believed that he would be parole eligible if sentenced to life, in violation of Simmons v. South Carolina, 512 U.S. 154 (1994), and its progeny. And even without the injection of future dangerousness, the court's failure to instruct the jury that Pennsylvania's life-sentencing alternative to the death penalty carries with it a statutory ineligibility for parole constituted independent violations of the Sixth Eighth, and Fourteenth Amendments on a variety of constitutional grounds.

441.    This claim was fairly presented to the Pennsylvania courts in the PCRA proceedings. See PCRA Petition, Claim IV; PCRA Appeal Brief, Issue III, at 17-22. This record-based claim also

2

was exhausted by operation of 42 Pa. C.S. § 9711(h)(3)(i), which requires the Pennsylvania Supreme Court to independently review the entire record of every death penalty case to determine whether "the sentence of death was the product of passion, prejudice or any other arbitrary factor."

442.    The Pennsylvania Supreme Court did not adjudicate this claim on its merits. Instead, it acknowledged the existence of only a single aspect of this claim – the portion seeking relief under Simmons v. South Carolina – and ignored the rest. This court has *de novo* review over all aspects of this claim that the Pennsylvania Supreme Court failed to address.

443.    With respect to the portion of this claim seeking relief under Simmons, the state court ignored Petitioner's compliance with all state court pleading requirements in effect at all times during his trial, direct appeal, and post-conviction proceedings in state court, and created and retroactively applied to him a waiver rule that was not in effect at the time purported waiver of this claim occurred. As a result of this inadequate state court resolution, this Court has *de novo* review of this portion of the claim.

A.    **Parole and Future Dangerousness Were Issues in this Case**

444.    The prosecution injected questions concerning Mr. Bracey's parole eligibility and his future dangerousness should he again be released from prison into this case even before the sentencing-phase began. First, as early as the voir dire proceedings and continuing through the entire trial, the massive, orchestrated police presence in the courtroom -- in uniform and with weapons -- in and of itself made the jurors feel that Edward Bracey was a dangerous person. E.g., Malloy Aff. ¶ 3; Ulmos Aff. ¶ 5; Spragins Aff. ¶ 4; Bilt Aff. ¶ 2.

445.    Then, in the guilt phase of trial, the Commonwealth presented evidence that Petitioner supposedly was carrying a gun because he intended to rob drug dealers, which evidence the

Pennsylvania Supreme Court itself determined "could have reasonably have led the jury to infer prior criminality on the part of Appellant or general bad character." Bracey-I, 662 A.2d at 1069 n.10.

446.    Next, in her guilt-stage closing argument, Prosecutor Rubino specifically argued Petitioner's prior convictions and parole status as motive for shooting Officer Boyle. She said (NT 3/2/92, at 134):

> What was he [Mr. Bracey] afraid of? **He was afraid of going back to jail. He was afraid because he had ten years back time**, and because he had a bench warrant . . . .

447.    This argument stressed to the jury that Mr. Bracey previously had been incarcerated and released, and suggested both that Bracey had violated the conditions of his parole ("he had ten years back time") and that he posed a threat if not incarcerated because he continued to engage in unlawful activity even while under bench warrant. This argument also created the perception that, if sentenced to life imprisonment, Mr. Bracey would at some time in the future become eligible for parole.

448.    Finally, during the sentencing-stage of trial, the Commonwealth introduced evidence of prior burglary convictions in an attempt to establish a prior history of violent felony convictions -- again emphasizing Petitioner's release from jail for these offenses. This testimony reinforced the Commonwealth's guilt-stage comments concerning Mr. Bracey's conduct while released from jail, and the implicit assumption that he would be eligible for parole if sentenced to life. It also necessarily injected the question of his supposed future dangerousness by arguing that he had a significant history of violence. The Commonwealth heightened this perception of Mr. Bracey's history of violence and criminal association by intentionally injecting into the case the otherwise irrelevant consideration that Petitioner had an alias. NT 3/4/92, at 24.

4

449. The court, during defense counsel's closing argument at the sentencing phase of trial, then compounded the implication that Edward Bracey could be eligible for parole. Counsel argued that Mr. Bracey would not be a future danger to society because he would be serving a sentence of life without parole. NT 3/4/92, at 64 ("life imprisonment, spending the rest of his life in jail, will keep society safe"). However, when the Commonwealth objected to the defense's accurate description, the court characterized that description as mere "argument." Id. at 63. Inexplicably, counsel then failed to request a life-without-parole instruction, even after the court's comments had reinforced the misperception that Mr. Bracey could be eligible for parole.

**B.      The Failure to Provide A "Life Without Parole" Instruction**

450. The statements concerning Mr. Bracey's record, his future dangerousness, and the implication of parole eligibility were compounded by the Court's characterization of defense counsel's statements concerning life without parole as "argument," the court's subsequent failure to accurately instruct the jury on the nature of its life-sentencing option, and counsel's failure to request an instruction to the jury that, in Pennsylvania, a life sentence means life without possibility of parole.

451. In his closing argument, defense counsel attempted to tell the jury that life for first-degree murder in Pennsylvania means life without parole. NT 3/4/92, at 63. This explanation was interrupted by an objection from the Commonwealth that suggested that Edward Bracey might at some point be released from prison if sentenced to life for the murder of Officer Boyle. The Court effectively ratified the Commonwealth's suggestion by characterizing defense counsel's explanation as "argument."

452. The sentencing-phase Notes of Testimony, page 63, indicate as follows:

5

[MR. PERRONE:]   Thirty years from now, I hope to be retired.  And when I'm retired in 30 years, Edward Bracey, if life imprisonment was the sentence of this jury, would still be in prison.

PROSECUTOR:  Objection.

THE COURT:  It's argument, ladies and gentlemen.  Go ahead.

453.   Rather than inform the jury that defense counsel was correctly describing the law, the court said simply: "It's argument, ladies and gentlemen.  Go ahead." Id.  Thus, the jury was left to decide for itself, without instruction from the court, whether counsel's "argument" that "life" under the Pennsylvania sentencing statute really meant "life" was accurate.[2]

454.   Counsel continued his argument for an additional page, concluding:  "My point, Ladies and Gentlemen, is that life imprisonment, spending the rest of his life in jail, will keep society safe; and, two, provides a substantial penalty." Id. at 64.

455.   This closing argument, however, was not sufficient to cure the Constitutional error created by the trial court's failure to instruct the jury as to the meaning of "life imprisonment" -- particularly given the trial court's dismissive characterization of life without parole as "argument."

456.   The jury could not help but understand this exchange as meaning that a life sentence did not necessarily mean life without parole.  This is so for three interlocking reasons, discussed below.

457.   First, just moments before, when the Commonwealth had argued that the Supreme

---

[2] The Court certainly knew how to instruct the jury as a matter of law on other disputed issues.  With respect to the use of Mr. Bracey's non-violent convictions to prove the aggravating circumstance of a substantial history of violent felonies, the Court instructed:  "I reiterate to you, under the laws of the Commonwealth of Pennsylvania, the Supreme Court of Pennsylvania has ruled, and it's the law, that a burglary is a felony involving the use or threat of violence to the person." NT 3/4/92, at 75.

Court had already determined as a matter of law that Mr. Bracey's two prior non-violent burglary convictions constituted a significant history of violent felony convictions, the Court overruled the defense's objection, saying: "That is, in fact, the law in Pennsylvania. The Supreme Court of Pennsylvania has said so." NT 3/4/92, at 58. The jury would have expected the Court to similarly affirm the defense's statement of the law if the statement was, in fact, accurate. The Court's characterization of "life without parole" as being "argument" rather than "the law" falsely informed the jury that "life" was not "life without parole."

458.    Second, in the trial court's sentencing-stage instructions, the Court repeatedly referred to the life-sentencing option simply as being "life" rather than "life without parole." E.g., NT 3/4/92, at 71-72 ("Ladies and gentleman of the jury, you now have to decide whether to sentence the defendant to death or to life imprisonment."). The Court never once explained that, as a matter of law, "life imprisonment" meant "without parole." However, at the same time, Judge Biunno instructed the jury:

> I reiterate to you, under the laws of the Commonwealth of Pennsylvania, **the Supreme Court of Pennsylvania has ruled, and it's the law,** that a burglary is a felony involving the use or threat of violence to the person. . . . **So that's decided,** that it is a crime of violence, **that's decided by the Supreme Court of Pennsylvania, and that's the law that binds me, and that's the law that I instruct you on.**

Id. at 75.

459.    Given the trial court's unequivocal instruction on the law of burglary, Judge Biunno's failure to provide a similar instruction that --

> Under the Pennsylvania capital sentencing code, a life sentence means life without parole. So that's decided, that life means no chance of parole, that's decided by the Pennsylvania legislature, and that's the law that binds me, and that's the law that I instruct you on. --

effectively misinformed the jury that a life sentence did not necessarily entail life without possibility of parole.

460.    Third, the Court had clearly articulated to the jury only one day before that the lawyer's arguments were only argument, that "you're not required to accept the arguments of either lawyer," and that the jury should be guided by an argument only "to the extent that the argument is supported by the evidence and insofar as the argument aids you in applying your own reasoning and common sense." NT 3/3/92, at 57.

461.    Judge Biunno told the jury:

> I remind you as clearly as I can, the questions which a lawyer puts to a witness is not evidence. Don't assume that a blessed thing is true because a lawyer in his or her question assumes that something is true. Lawyers, oftentimes they want to suggest things to the jury. They do that in a question, ignore it. It's not evidence. Evidence comes from the witness stand, doesn't come from the lawyers. The lawyers weren't there. They were not witnesses. They're partisans.

Id. at 56.

> The statements and the arguments of the lawyers is not part of the evidence. I can't stress too strongly, evidence comes from witnesses, from exhibits. Doesn't come from the mouth of a lawyer, or judge.

Id. at 56-57. Finally, Judge Biunno stated:

> The arguments, I stress, made by the lawyers are not evidence. . . . It's the right and the duty and the obligation of each lawyer to discuss the evidence in a manner which is most favorable to the side that he or she represents. You should be guided by each lawyer's arguments to the extent that the argument is supported by the evidence and insofar as the argument aids in [sic] you in applying your own reasoning and common sense. However, you're not required to accept the arguments of either lawyer. It's for you and you alone to decide the case based on the evidence as it was presented from the witness stand, in accordance with these instructions that I'm giving you.

Id. at 57.

462.    Additionally, the prosecutor told the jury in her guilt-stage closing argument:

>    The Judge will give you the law, and you heard all the evidence. Speeches of counsel are not evidence, and that includes both the opening and the closing arguments. You heard all the evidence in this case from that witness stand, not from what we say in our speeches.

NT 3/2/94, at 123.

463.    Apart from appointed counsel's "argument" on the nature of a life sentence in Pennsylvania, the defense presented no "evidence" that a life sentence meant life without parole. As a result, the characterization of the defense "life without parole" statement as being "argument" rather than "the law" effectively informed the jury --

*    Not to assume the truth of the statement just because the defense assumed that it was true, because "Lawyers, oftentimes they want to suggest things to the jury. They do that in a question, ignore it. It's not evidence. Evidence comes from the witness stand, doesn't come from the lawyers."

*    That counsel's "argument" concerning the impossibility of parole was "not part of the evidence" and there was no evidence that life meant life without possibility of parole.

*    That counsel's suggestion that life meant life without parole was in actuality just legal hyperbole -- part of "the obligation of each lawyer to discuss the evidence in a manner which is most favorable to the side that he or she represents."

*    That counsel's argument (unsupported by any evidence) that life means life without parole should be subordinated to the jury's common understanding of a life sentence because the jury "should be guided by each lawyer's arguments to the extent that the argument is supported by the evidence and insofar as the argument aids in [sic] you in applying your own reasoning and common sense."

*    That, unless there was further instruction from the Court, the jury need not accept defense counsel's accurate description of the law because "you're not required to accept the arguments of either lawyer. It's for you and you alone to decide the case based on the evidence as it was presented from the witness stand, in accordance with these instructions that I'm giving you."

464.    Consequently, the trial court's comment branding as "argument" the defense

statement that --

> Ladies and gentlemen, in the State of Pennsylvania, life imprisonment carries a period of life imprisonment. There is no such thing in this Commonwealth as life imprisonment with parole.

-- was akin to advising the jury that it was free to view a life sentence as carrying with it the possibility of parole.

465.    Moreover, the sentencing-stage instructions that Judge Biunno provided to the jury did not inform the jury that, as a matter of law, "life" actually meant "life without possibility of parole," rather than some undefined term of years followed by eventual release. Those instructions informed the jury that it had the choice of sentencing Edward Bracey to life or death, but did not make any mention of the unavailability of parole, NT 3/4/92, at 72, leaving the jury to speculate as whether "'life imprisonment" meant life with parole or without parole. Such speculation is inconsistent with the requirements of the Sixth, Eighth, and Fourteenth Amendments.

## C.    The Jurors in this Case Erroneously Believed that Mr. Bracey Would be Eligible for Parole if He Received a Life Sentence.

466.    Pennsylvania's capital sentencing jurors are the most uninformed among American death penalty jurisdictions as to the meaning of a life sentence, with fully half of Pennsylvania death-qualified jurors believing that a life sentence carries the possibility of parole or release after only twelve to fourteen years in prison. Bowers & Steiner, *Death by Default: An Empirical Demonstration of False and Forced Choices in Capital Sentencing*, 77 TEX. L. REV. 605, 648 n.200 (1999).

467.    However, while the jurors in this case were left to speculate as to whether a life sentence carried the possibility of parole, we do not need to speculate as to what the jurors thought

a life sentence meant. Juror Marion Malloy explained: "We believed that Mr. Bracey would get out of prison if we sentenced him to life imprisonment. We did not know that in Pennsylvania life imprisonment meant that Mr. Bracey would not be paroled." Affidavit of Marion Malloy ¶ 7; see also Affidavit of Susan Greenjack ¶ 2 ("When I served on the jury, I believed that a life sentence meant that someone sentenced to life would eventually get out of prison on parole. A death sentence meant that the defendant would be more confined within the prison."); Affidavit of Aaron Ervin ¶ 4 (jury foreman; "I felt that if we granted life to Mr. Bracey that meant life with the possibility of parole").

468.    Thus, there can be no question that some of the jurors who sentenced Mr. Bracey to death did so under the misunderstanding that he would be eligible for parole and return to the streets unless they did so.

## D.    The Trial Court's Failure to Provide a Life Without Possibility of Parole Instruction Violated the Sixth, Eighth, and Fourteenth Amendments.

469.    The Court's failure to provide the jury with an instruction that a life sentence in Pennsylvania means "life without possibility of parole" violated the Sixth, Eighth, and Fourteenth Amendments.

470.    The evidence and argument in this case placed the defendant's future dangerousness at issue. Petitioner's due process rights under Simmons v. South Carolina, 512 U.S. 154 (1994), were denied when the Court failed to provide a life without parole instruction and falsely portrayed defense counsel's attempt to explain the nature of a life sentence in Pennsylvania as mere "argument."

471.    Moreover, the Commonwealth's objection to the defense attempt to characterize a

11

life sentence as more than thirty years, sustained by the court and coupled with the trial court's failure to provide a legally accurate instruction that Petitioner was statutorily ineligible for parole, violated Petitioner's constitutional rights in a number of *other* distinct and independent ways.

472.    It violated the long-standing due process proscription against sentences imposed by a sentencer acting under a material misapprehension of law or fact relating to the sentencing decision. Townsend v. Burke, 334 U.S. 736, 741 (1948); United States v. Tucker, 404 U.S. 443, 447 (1972).

473.    It violated the due process proscription against sentencing a defendant to death based upon information he had no opportunity to rebut or explain.  Skipper v. South Carolina, 476 U.S. 1 (1986); Gardner v. Florida, 430 U.S. 349 (1977).

474.    It violated Petitioner's Fourteenth Amendment life and liberty interest to sentencing by a jury deciding between the statutorily mandated sentencing options of life without possibility of parole and death.  See Hicks v. Oklahoma, 447 U.S. 343, 346 (1980).[3]

475.    It denied the jury the accurate sentencing information that is indispensable to a reasoned moral determination of whether a defendant should live or die and presented the jury with a false choice of sentencing options. Gregg v. Georgia, 428 U.S. 153, 190 (1976); Simmons, 512 U.S. at 172-73 (Souter, J., concurring).  This denied Mr. Bracey the heightened procedural safeguards constitutionally required in capital cases, and resulted in an arbitrary and capricious death sentence in violation of the Eighth Amendment. E.g., Woodson v. North Carolina, 428 U.S. 280 (1976); Godfrey v. Georgia, 446 U.S. 420 (1980); Mills v. Maryland, 486 U.S. 367 (1988).

---

[3] See also Sattazahn v. Pennsylvania, No. 01-7574, *Brief of Respondent Commonwealth of Pennsylvania*, 2002 WL 1885050, *40 (U.S. Aug. 2, 2002) (Pennsylvania capital defendant "has a liberty interest in the jury's being informed of all the sentences which it can impose").

476.    It violated the hallmark requirement of the Eighth Amendment that a capital sentencing jury must be permitted to consider and give effect to all relevant mitigating evidence. Skipper v. South Carolina, 476 U.S. 1, 4 (1986); Eddings v. Oklahoma, 455 U.S. 104, 110 (1982); Lockett v. Ohio, 438 U.S. 586, 605 (1978). Because the jury was unaware of its sentencing options, its determinations of what evidence was mitigating under the circumstances, and what weight to afford the mitigating evidence, were prejudicially skewed against Petitioner.

477.    Because Pennsylvania is the only remaining death penalty jurisdiction in the United States that offers capital sentencers a binary choice between death and life without possibility of parole but refuses to inform sentencing jurors of the statutory impossibility of parole, the failure to provide a life without parole instruction offended all of the indicia underlying "the evolving standards of decency that mark the progress of a maturing society," Trop v. Dulles, 356 U.S. 86, 101 (1958), in violation of the Eighth Amendment.

478.    It created a false sentencing choice that would result in harsher penalty options, making a sentence of death more likely to be imposed.  This resulted in a capital sentencing hearing before a jury "uncommonly willing to condemn a man to die," Witherspoon v. Illinois, 391 U.S. 510, 521 (1968), in violation of Petitioner's Sixth Amendment right to an impartial capital sentencing jury.

479.    All of these constitutional principles were well known by the time of Petitioner's trial. Consequently, trial counsel was ineffective for failing to insist that the Court provide an accurate explanation of the life without parole sentencing option on each of these grounds and for failing to litigate this issue.  For the same reason, direct appeal counsel was ineffective for failing to present these additional meritorious issues on direct appeal.

480.    Edward Bracey is entitled to a new sentencing hearing.

## XVI. TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE FOR FAILING TO RAISE THE ISSUES PRESENTED IN THIS PETITION AT TRIAL AND IN POST-TRIAL MOTIONS, AND FOR FAILING TO PROPERLY LITIGATE THESE ISSUES ON DIRECT APPEAL.

481.    All other allegations and facts contained in the habeas petition, its attachments, and this supplement are incorporated as if fully set forth herein.

482.    To the extent that trial counsel failed to properly investigate and to make the objections and arguments raised throughout this petition, they provided ineffective assistance of counsel, in violation of Petitioner's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

483.    To the extent that appellate counsel failed to raise on direct appeal any of the claims set forth herein, such counsel rendered ineffective assistance of counsel, in violation of Petitioner's rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

484.    Although each instance of counsels' failures requires relief individually, in addition, the cumulative effect of each instance of counsels' failures is sufficiently prejudicial to require relief.

## XVII. PETITIONER IS ENTITLED TO A NEW TRIAL AND SENTENCING PROCEEDING BECAUSE THE CUMULATIVE EFFECT OF THE ERRORS IN THIS CASE UNDERMINES CONFIDENCE IN THE OUTCOME AT BOTH STAGES OF TRIAL.

485.    All other allegations and facts contained in the habeas petition, its attachments, and this supplement are incorporated as if fully set forth herein.

486.    Courts have long recognized that constitutional claims of error are to be considered cumulatively as well as individually, and that cumulative error or prejudice may provide a basis for relief whether or not the effect of individual errors warrants relief.  If the court finds cumulative

prejudice, it eliminates the need to analyze the individual prejudicial effect of each deficiency.

487.    The circumstances of this case demonstrate that the cumulative effect of counsel's serious failures, and the constitutional errors committed by the court and the prosecutor, so undermined the fairness of the trial and sentencing proceedings that Petitioner's conviction must be overturned, or, alternatively, that his sentence of death must be vacated.

## SUPPLEMENTAL PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing, Petitioner, EDWARD BRACEY, prays that the Court grant him the following relief:

A)    That Petitioner be granted such discovery as is necessary for full and fair resolution of the claims contained in this Supplemental Petition;

B)    That leave to amend his Petition and Supplement be granted, as may be appropriate;

C)    That an evidentiary hearing be conducted on all claims involving disputed issues of fact;

D)    That Petitioner be permitted to file a memorandum of law addressing the legal issues raised by this case, any procedural issues and questions of law related to the federal habeas corpus statute;

E)     That Respondents be ordered to respond to the petition, as supplemented, and memorandum; and

F)     That Petitioner's convictions and death sentences be vacated.

Respectfully submitted,

Billy H. Nolas
Robert Brett Dunham
James Moreno
Ellen Berkowitz
DEFENDER ASSOCIATION OF PHILADELPHIA
Federal Court Division, Capital Habeas Corpus Unit
The Curtis Center, Suite 545 West
Independence Square West
Philadelphia, Pennsylvania 19106
(215) 928-0520

November 27, 2002

16

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a copy of the foregoing *Supplement to Petition for Writ of Habeas Corpus* to be filed on the following person by first class United States mail, postage prepaid:

> Thomas Dolgenos, Esquire
> Philadelphia District Attorney's Office
> 1421 Arch Street
> Philadelphia, PA 19102

Robert Brett Dunham

Dated: November 27, 2002