IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD BRACEY,

    Petitioner,

    v.

JEFFREY BEARD, Commissioner, :
Pennsylvania Department of Corrections; :
DONALD T. VAUGHN, Superintendent of the :
State Correctional Institution at Graterford, and :
JOSEPH P. MAZURKIEWICZ, Superintendent :
of the State Correctional Institution at :
Rockview, :
    :
    :
    Respondents. :
    :

CIVIL ACTION
(capital habeas corpus)

No. 02-3685

(Hon. Berle M. Schiller)

## AMENDMENT TO PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Edward Bracey, through counsel, files this amendment to his Petition for Writ of Habeas Corpus and its Supplement, and in support thereof avers as follows:[1]

## PROCEDURAL HISTORY

1.    Petitioner was found guilty of first degree murder and related charges on March 3, 1992, after a jury trial in the Philadelphia Court of Common Pleas (Biunno, J., presiding). Following a brief capital sentencing hearing, he was sentenced to death that same day. Commonwealth v. Bracey, June Term, 1991, Nos. 3282-3288 (Philadelphia C.P., Crim. Div.). Post-verdict motions were denied. Petitioner was represented by court-appointed counsel, William Perrone, in all

---

[1] All emphasis herein is supplied unless otherwise indicated. The transcripts from the state court proceedings are identified by the page and volume number or date.

proceedings in the Court of Common Pleas.[2]

2.      The Pennsylvania Supreme Court affirmed Petitioner's convictions and death sentence on direct appeal on July 21, 1995. <u>Commonwealth v. Bracey</u>, 662 A.2d 1062 (Pa. 1995) ("<u>Bracey-I</u>"). Petitioner was represented by court-appointed counsel, Daniel Rendine, on direct appeal.

3.      Petitioner filed a <u>pro se</u> form petition for state post-conviction relief on May 10, 1996. Undersigned counsel prepared and filed an amended, counseled *Petition for Habeas Corpus Relief under Article I, Section 14 of the Pennsylvania Constitution and for Statutory Post-Conviction Relief under the Post Conviction Relief Act* on November 22, 1996, and represented Petitioner during the state post-conviction proceedings. The Court of Common Pleas denied post-conviction relief on July 28, 1998.

4.      The Pennsylvania Supreme Court denied relief on the PCRA appeal on December 31, 2001, <u>Commonwealth v. Bracey</u>, 795 A.2d 935 (Pa. Dec. 31, 2001), and denied reargument on April 18, 2002.

5.      On May 17, 2002, the Commonwealth issued a death warrant, scheduling Petitioner's execution for July 11, 2002. This Court granted Petitioner's motion for a stay of execution and appointed undersigned counsel (employed by the Defender Association of Philadelphia, Federal Court Division) to represent Petitioner in these habeas corpus proceedings.

6.      On or about November 22, 2002, Petitioner, through undersigned counsel, filed his first federal Petition for Writ of Habeas Corpus. On November 27, 2002, Petitioner filed a

---

[2] Mr. Perrone was subsequently disbarred for fraudulent billing practices during the time period that encompassed his representation of Petitioner.

Supplemental Petition for Writ of Habeas Corpus, adding arguments that had inadvertently been left out of his initial Petition.

7.     Six months after the Pennsylvania Supreme Court affirmed the denial of Petitioner's state court post-conviction petition, the United States Supreme Court, on June 20, 2002, issued its decision in Atkins v. Virginia, 122 S.Ct. 2242 (2002), and held that the execution of mentally retarded defendants violates the Eighth Amendment to the United States Constitution.

8.     On August 16, 2002, Petitioner filed a *Petition for Habeas Corpus Relief under Article I, Section 14 of the Pennsylvania Constitution and for Statutory Post-Conviction Relief under the Post Conviction Relief Act* in the Philadelphia County Court of Common Pleas (attached hereto) and on that same date, filed a *Petition for Writ of Habeas Corpus, Extraordinary Relief And/Or The Exercise of Kings Bench Jurisdiction* with the Pennsylvania Supreme Court, seeking relief under Atkins. (Both documents are attached hereto.)

9.     On December 31, 2002, the Pennsylvania Supreme Court denied Petitioner's *Petition for Writ of Habeas Corpus, Extraordinary Relief And/Or The Exercise of Kings Bench Jurisdiction* "without prejudice to the trial court to review the matter." (Order appended hereto.) As of this date, the state trial court has yet to rule on Petitioner's application for state post-conviction relief.

## SUPPLEMENTAL CLAIM FOR RELIEF

**XVIII.     PETITIONER'S EXECUTION IS PRECLUDED BY THE EIGHTH AND FOURTEENTH AMENDMENTS BECAUSE OF MENTAL RETARDATION**

10.     The claims and factual allegations set forth in all other sections of Petitioner's Petition for Writ of Habeas Corpus, its Supplement, and all other submissions by Petitioner are incorporated by reference and realleged as if set forth herein.

3

11.    In Atkins, the United States Supreme Court held that the Eighth Amendment's ban on excessive and cruel and unusual punishments prohibits the execution of individuals who suffer from mental retardation. Rejecting its previous contrary holding in Penry v. Lynaugh, 492 U.S. 302 (1989), the Court concluded that the Eighth Amendment "'places a substantive restriction on the State's power to take the life' of a mentally retarded offender." Atkins, 122 S.Ct. at 2252 (quoting Ford v. Wainwright, 477 U.S. 399, 405 (1986)).

12.    Atkins is retroactively applicable to Petitioner, as Penry itself stated, and as every federal court to address the issue has held. See Penry, 492 U.S. at 329 (a constitutional prohibition of the execution of mentally retarded individuals would be retroactive under federal law); In re Holladay, — F.3d —, 2003 WL 21210330, *3 (11th Cir. May 26, 2003) ("the new constitutional rule abstractly described in Penry and formally articulated in Atkins is retroactively applicable to cases on collateral review") (citing Walker v. True, 2003 WL 21008657 (4th Cir. May 6, 2003); In re. Morris, 328 F.3d 739 (5th Cir. 2003); Bell v. Cockrell, 310 F.3d 330 (5th Cir. 2002); Hill v. Anderson, 300 F.3d 679 (6th Cir. 2002)). The rule established by Atkins meets an exception to non-retroactivity, as it precludes the execution of a class of offenders, i.e., those with mental retardation.

13.    The Atkins Court noted that the mentally retarded, "[B]ecause of their disabilities in reasoning, judgment, and control of their impulses...do not act with the level of moral culpability that characterizes the most serious adult criminal conduct." Atkins, 122 S.Ct. at 306. As described below, there is evidence that Petitioner fits within the class of individuals who suffer from mental retardation.

14.    Pennsylvania has but one statutory definition of mental retardation. It is found in the "Definitions" section of the Mental Health and Mental Retardation Act of 1966:

4

"Mental retardation" means <u>subaverage general intellectual functioning</u> which originates during the developmental period and is associated with impairment of one or more of the following: (1) maturation, (2) learning and (3) social adjustment.

50 P.S. § 4102.

15.    Likewise, the American Association of Mental Retardation defines mental retardation as:

Mental retardation refers to substantial limitations in present functioning. It is characterized by subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18.

Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed. 1992). There is evidence that Petitioner's intellectual and adaptive deficits satisfy these standards.

16.    Petitioner has exhibited a wide range of adaptive and developmental deficits since childhood. For example, records, family accounts, and professional evaluations show that his intellectual deficits and adaptive deficits are both long standing and severe. Testing indicates that he has never functioned at level higher than that of a fourteen year old child. The evidence of Petitioner's intellectual and adaptative deficits was presented to the state court in the context of other claims, including the claim of ineffective assistance of counsel in the penalty phase. The <u>Atkins</u> claim and supporting evidence were also outlined in the state court petitions on the <u>Atkins</u> issue.

17.    The records presented to the state court also indicate that Mr. Bracey's intellectual functioning was tested in the subaverage range of intelligence as early as when he was eleven years old. Additionally, neuropsychological testing of Mr. Bracey by Dr. Harry Krop, Ph.D., revealed severely impaired reasoning and a chronic pattern of cognitive impairment from a very young age.

Moreover, Mr. Bracey exhibited adaptive deficits throughout his life consistent with his subaverage intellectual functioning. For example, he did not meet normal childhood developmental milestones such as walking or acquiring language. Mr. Bracey did not learn to string words together in a sentence until he was four years old, had terrible difficulty reading throughout his life, suffered from severe memory lapses and has consistently exhibited an inability to understand even simple conversation and instruction.

18.    A court-ordered psychiatric evaluation revealed that Petitioner's fund of knowledge was barely adequate and that he suffered from a disturbance of functioning. Additionally, review of Petitioner's school records reveals consistently poor performance on standardized tests.

19.    Neuropsychological testing conducted by Dr. Carol Armstrong also found serious cognitive impairments, consistent with the information in other records and from Petitioner's family history concerning Petitioner's severe intellectual impairments. For example, Dr. Armstrong noted:

> The number of domains affected and the severity of the deficits indicate a severe and chronic pattern of neurocognitive impairment, which qualitatively can be described as dementia. Furthermore, reports about Mr. Bracey's functioning from those who knew him provide evidence that his severe cognitive impairment is chronic and long-standing. Descriptions of his childhood behavior, academic records and current neuropsychological findings indicate widespread neurocognitive impairment dating from childhood. The neuropsychological testing confirmed the long-standing nature of the impairment of brain functioning from which Mr. Bracey has suffered.

Affidavit of Carol Armstrong, Ph.D., at ¶ 7. Dr. Armstrong concluded that Petitioner's neurocognitive impairment is severe, and includes emotional lability; problems with impulse control; difficulties with problem solving; retaining information and reasoning; impaired capacity to integrate information; and heightened impairments when under stress. Id. at ¶ 14.

20.    Petitioner was also evaluated by Dr. Neil Blumberg, M.D., who, as a result of his

6

evaluation of Petitioner and his review of the available records and family history, found that Petitioner has a history of developmental delays, including an inability to understand and an inability to speak in sentence form until he was four years old.

21.    Family members testified at the state court post-conviction hearing that Petitioner was not "normal"; could not follow conversations; often appeared to be "in space"; was "slow"; could not read; and could not fill out job applications.  See NT 4/23/98 at 11 (Marie Artist); NT 4/23/98 at 11-14, 20 (Letitia Fletcher); NT 4/23/98 at 181-84 (Cassandra Bradley); NT 4/24/98 at 51-54 (Janet Whack); NT 4/24/98 at 108-10 (Joanne Bradley Ward); NT 4/24/98 at 79 (Alberta Stanley); NT 4/24/98 at 160-61 (Sharon Bracey); NT 4/24/98 at 183 (Ronji Stroman).

22.    The testimony of Petitioner's family, as well as records about Petitioner's life history and testimony of the expert witnesses support Petitioner's claim under Atkins.

23.    Petitioner submits that his execution would constitute cruel and unusual punishment pursuant to the Eighth and Fourteenth Amendments and the Supreme Court's decision in Atkins v. Virginia, 122 S.Ct. 2242 (2002).

Respectfully submitted,

Billy H. Nolas
Robert Brett Dunham
James Moreno
Assistant Federal Defenders
Defender Association of Philadelphia
Capital Habeas Corpus Unit
The Curtis Center, Suite 545 West
Independence Square West
Philadelphia, Pennsylvania 19106

Dated: June 18, 2003

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

COMMONWEALTH OF PENNSYLVANIA, : No. 137 EM 2002

      Respondent

     v.

EDWARD BRACEY,

      Petitioner

## <u>ORDER</u>

**PER CURIAM**

  **AND NOW**, this 31st day of December, 2002, the Petition for Writ of Habeas Corpus, Extraordinary Relief and/or Exercise of King's Bench Jurisdiction is denied without prejudice to the trial court to review the matter.

TRUE COPY FROM RECORD

Attest: DEC 3 1 2002

Patricia Johnson, Chief Clerk
Supreme Court of Pennsylvania,
Eastern District

IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

RECEIVED

AUG 1 6 2002

SUPREME COURT
EASTERN DISTRICT

COMMONWEALTH OF PENNSYLVANIA,          :

            Respondent,                :          Docket No. _____

      v.                               :

EDWARD BRACEY,                         :

            Petitioner.                :

---

PETITION FOR WRIT OF HABEAS CORPUS,
EXTRAORDINARY RELIEF AND/OR THE EXERCISE
OF KING'S BENCH JURISDICTION

---

Robert Brett Dunham
Attorney I.D. #56422
Billy Nolas
Attorney I.D. # 83177
James Moreno
Attorney I.D. #86838
Ellen B. Berkowitz
Attorney I.D. #80186
Defender Association of Philadelphia
Suite 545 West – The Curtis Building
Independence Square West
Philadelphia, PA 19106
215-928-0520

Dated: August 16, 2002

## APPLICATION FOR LEAVE TO FILE ORIGINAL PROCESS

Petitioner applies for leave to file original process under Pa. R. App. P. 3307. This petition is appropriate for the Court's consideration and the granting of relief, as the text of the petition describes. Pursuant to Rule 3307(b), Petitioner shows service through his appended Certificate of Service on the parties identified by the appended Certificate.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter under its inherent King's Bench powers.[1] This court should exercise its Kings Bench jurisdiction, 42 Pa.C.S. § 726, and, as described below, its habeas corpus authority, to decide the important matters discussed herein.[2] In matters "of immediate

---

[1] See Pennsylvania Constitution, Article 5 §2 ("The Supreme Court (a) shall be the highest court of the commonwealth . . .[and] (c ) shall have jurisdiction as provided by law"); see 42 Pa.C.S. 502 ("The Supreme Court shall have and exercise the powers vested in it by the Constitution of Pennsylvania, including the power generally to minister justice to all persons and to exercise the powers of the court, as fully and amply, to all intents and purposes, as the justice of the Court of King's Bench . . . could or might do on May 22, 1722."). See e.g., Commonwealth v. Onda, 103 A.2d 90 (Pa. 1954). In Onda, this Court described the scope and antiquity of its King's Bench powers:

> It is said in Blackstone, Book 3, ch. 4, *42 that "The jurisdiction of this court [Court of King's Bench] is very high and transcendent. It keeps all inferior jurisdiction within the bounds of their authority, and may either remove their proceedings to be determined here, or prohibit their progress below. * * * It protects the liberty of the subject, by speedy and summary interposition."

Id. (citing Gosline v. Place, 32 Pa. 520, 523 (1859); Schmuck v. Haritman, 70 A. 1091, 1092 (Pa. 1908)). The exercise of the power in this situation would "conserve judicial resources" and "speed the [disposition] in this case." Commonwealth v. Lang, 537 A.2d 1361, 1363 n.1 (Pa. 1988); Commonwealth v. Martorano, 634 A.2d 1063, 1067 n.6 (Pa. 1993) (same).

[2] See 42 Pa.C.S. § 726 ("Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court ... of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be

1

public importance," § 726, this Court often finds it "appropriate to assume jurisdiction under section 726 in order to conserve judicial resources, expedite the proceedings and provide guidance to the lower courts on a question that is likely to recur."[3] Here, all of these factors show that this Court should hear and decide this case.

This case involves issues of "immediate public importance," as required by section 726. Indeed, this Court has found an "overwhelming public interest" in fair and constitutional administration of the death penalty in this Commonwealth. McKenna, 383 A.2d at 180.[4]

---

done."); Pa. Const. Art. V, § 10(a)("The Supreme Court shall exercise general supervisory and administrative authority over all the courts."); 42 Pa.C.S. § 502 ("The Supreme Court shall have and exercise the powers vested in it by the Constitution of Pennsylvania, including the power generally to minister justice to all persons and to exercise the powers of the court, as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, could or might do on May 22, 1722. The Supreme Court shall also have and exercise the following powers: (1) All powers necessary or appropriate in aid of its original and appellate jurisdiction which are agreeable to the usages and principles of law. (2) The powers vested in it by statute, including the provision of this title."); Pa.R.A.P. 3309.

[3] Commonwealth v. Morris, 771 A.2d 721, 731 (Pa. 2001) (exercising § 726 jurisdiction to decide proper interpretation of PCRA's stay of execution provisions (citing Commonwealth v. Martorano, 634 A.2d 1063, 1073, n.6 (Pa. 1993))); Commonwealth v. Lang, 537 A.2d 1361, 1363 n.1 (Pa. 1988) (taking King's Bench jurisdiction to determine whether grand jury could investigate defendant even after he had been charged with a crime; exercising King's Bench jurisdiction "in order to conserve judicial resources, speed the criminal trial in this case, and provide guidance for the lower courts as to a question that is likely to recur"); Commonwealth ex rel. Colville v. Laffey, 402 A.2d 994 (Pa. 1979) (exercising § 726 jurisdiction to resolve pre-trial dispute "and to assure the orderly disposition of pending criminal charges."); In re Dwyer, 406 A.2d 1355 (Pa. 1979) (taking extraordinary and King's Bench jurisdiction to grant members of the Bureau of Industrial Safety quasi-judicial immunity); Deer Creek Drainage Basin Authority v. County Board of Elections, 381 A.2d 103 (Pa. 1977) (exercising plenary jurisdiction and granting injunction to resolve dispute over ordinance on ballot); Allegheny County v. Commonwealth, 534 A.2d 760, 764 (Pa. 1987) (exercising King's Bench powers to order funding of unified judicial system).

[4] See also Morris, 771 A.2d at 731 (§ 726 jurisdiction to decide proper interpretation of PCRA's stay of execution provisions for successive petitions); Martorano, 634 A.2d at 1067 n.6 (review of bail orders in capital cases); Tilley, 780 A.2d at 652 n.6 (Commonwealth urged § 726

In order to protect their client's rights, lawyers have filed or are about to file in various Pennsylvania courts petitions raising <u>Atkins</u> claims for several Pennsylvania death row prisoners. As described above, Pennsylvania now has no well-defined mechanism for presenting and litigating these claims. Without guidance from this Court, the lower court litigation will no doubt result in numerous inconsistent decisions, all of which will require this Court's eventual review and some of which may result in reversals. Under these circumstances, it is clear that this Court's review of these matters <u>now</u> will "conserve judicial resources, expedite the proceedings and provide guidance to the lower courts on a question that is likely to recur." <u>Morris</u>.

This Court can exercise jurisdiction whether there is a matter pending before a lower court or not.[5] This Court has used King's Bench power in a variety of contexts, both criminal and non-criminal, when the interests of justice so indicated. <u>E.g.</u>, <u>Commonwealth v. Lang</u>, 537 A.2d 1361, 1363 n.1 (Pa. 1988) (taking King's Bench jurisdiction to determine whether grand jury could investigate defendant even after he had been charged with a crime; exercising King's Bench jurisdiction "in order to conserve judicial resources, speed the criminal trial in this case, and provide guidance for the lower courts as to a question that is likely to recur."); <u>Commonwealth v. Martorano</u>, 634 A.2d 1063, 1067 n.6 (Pa. 1993) (exercise of King's Bench powers appropriate "in order to conserve judicial resources, speed the subsequent retrial in this case, and provide guidance to the lower courts on a question that is likely to recur"); <u>Commonwealth ex rel. Colville v. Laffey</u>, 485 Pa. 342, 402 A.2d 994 (1979) (exercising § 726 extraordinary jurisdiction to resolve pre-trial dispute

_____

jurisdiction to review PCRA discovery order in capital case).

[5] <u>See</u> <u>e.g.</u> <u>In Re Avellino</u>, 547 Pa. 385 (1997).

3

"and to assure the orderly disposition of pending criminal charges."); In re Dwyer, 486 Pa. 585, 406 A.2d 1355 (1979) (taking extraordinary and King's Bench jurisdiction to grant members of the Bureau of Industrial Safety quasi-judicial immunity); Deer Creek Drainage Basin Authority v. County Board of Elections, 475 Pa. 491, 381 A.2d 103 (1977)(exercising plenary jurisdiction and granting injunction to resolve dispute over ordinance on ballot); Allegheny County v. Commonwealth, 517 Pa. 65, 75, 534 A.2d 760, 764 (1987) (exercising King's Bench powers to order funding of unified judicial system).  Similarly, in In re Bell's Petition, 396 P. 592, 152 A.2d 731 (1959), this Court took jurisdiction and ordered injunctive relief, despite the fact that a case had not been commenced in any other court.  See also Deer Creek Drainage Basin Auth. v. County Bd. of Elections, 475 Pa. 491, 381 A.2d 103 (1977); In re Avellino, 547 Pa. 385, 690 A. 2d 1138 (1997) (taking King's Bench supervisory jurisdiction despite fact that no case pending in lower court).

In addition, this Court has the jurisdiction to grant extraordinary relief pursuant to Article 5, Section 10(c) of the Pennsylvania Constitution.

Finally, this Court has original jurisdiction over this Petition for Writ of Habeas Corpus. See 42 Pa.C.S. § 721(1) ("The Supreme Court shall have original but not exclusive jurisdiction of all cases of ... [h]abeas corpus."); Commonwealth ex rel. Paylor v. Claudy, 77 A.2d 350, 352 (Pa. 1951) ("This Court possesses and frequently has taken original jurisdiction in applications for writs of habeas corpus."); Commonwealth ex rel. Torrance v. Salzinger, 177 A.2d 619 (Pa. 1962).

## PROCEDURAL HISTORY

Petitioner, Edward Bracey, was convicted, in the Philadelphia County Court of Common Pleas, of First Degree Murder, possession of an instrument of crime, theft by receiving stolen property and criminal trespass.  He was subsequently sentenced to death. This Court affirmed

4

Petitioner's convictions and sentence of death. See Commonwealth v. Bracey, 541 Pa. 322, 662 A.2d 1062 (1995). Appellant then unsuccessfully sought post-conviction relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541 et seq. See Memorandum of Decision dated July 28, 1998 (Jones, J.). Appellant's appeal of the denial of his post-conviction relief act petition was denied by this Court on December 31, 2002. See Commonwealth v. Bracey, 795 A.2d 935 (2001).

Petitioner is preparing to file his Petition for Writ of Habeas Corpus with the Federal Court, Eastern District of Pennsylvania. See Bracey v. Beard, No. No. 02-3685. That matter is pending.

On June 20, 2002, the United States Supreme Court decided Atkins v. Virginia, 122 S.Ct. 2242 (2002). On August 16, 2002, Petitioner filed a *Petition for Post-Conviction Relief under 42 Pa.C.S. §§ 9541, et Seq., and for Habeas Corpus Relief under Article I, Section 14 of the Pennsylvania Constitution and Consolidated Memorandum of Law* in the Philadelphia County Court of Common Pleas.

## WHY THIS COURT SHOULD GRANT THE RELIEF REQUESTED

## I.    INTRODUCTION[6]

The United States Supreme Court recently held that the execution of mentally retarded defendants violates the Eighth Amendment. See Atkins v. Virginia, 122 S.Ct. 2242 (2002). An as yet undetermined, but substantial, number of prisoners whose executions are barred by Atkins are currently on Pennsylvania's death row.[7] Yet Pennsylvania lacks any well-defined mechanism for

---

[6]All emphasis herein is supplied, unless otherwise indicated. Some parallel citations are omitted.

[7]The Pennsylvania District Attorney's Association has testified that the Department of Corrections has information that at least 26 death row inmates are mentally retarded.

the presentation and litigation of <u>Atkins</u> claims. This has created a crisis situation that cannot be fairly and efficiently resolved without guidance from this Court.

## II.    <u>ATKINS V. VIRGINIA</u> AND THE NEED FOR THIS COURT'S GUIDANCE

In <u>Atkins</u>, the United States Supreme Court held that the Eighth Amendment's ban on excessive and cruel and unusual punishments prohibits the execution of individuals who suffer from mental retardation. Reversing its prior decision in <u>Penry v. Lynaugh</u>, 492 U.S. 302 (1989), the Court concluded that the Eighth Amendment "'places a substantive restriction on the State's power to take the life' of a mentally retarded offender." <u>Atkins</u>, 122 S.Ct. at 2252 (quoting <u>Ford v. Wainwright</u>, 477 U.S. 399, 405 (1986)).

<u>Atkins</u> "le[ft] to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences." <u>Id.</u>, 122 S.Ct. at 2250 (quoting <u>Ford</u>, 477 U.S. at 416-17). By the time <u>Atkins</u> was decided, many states had already banned the execution of mentally retarded persons as a matter of state law and, therefore, have in place well-defined practices and procedures for adjudication of such issues. Pennsylvania, as one of the few states that permitted execution of mentally retarded offenders, does <u>not</u> have such a mechanism. This Court should establish procedures for cases where evidence of mental retardation is presented.[8]

---

[8]This Court has previously granted review for similar reasons. <u>E.g.</u>, <u>In re Heidnik</u>, 720 A.2d 1016, 1017 (Pa. 1998) ("[W]e entered a stay and granted a Petition for Review in order to examine, with due reflection and deliberation apart from an 'emergency' setting, certain threshold issues that are likely to recur in the carrying out of capital sentences"; issues considered included the definition of "competency" to be executed and procedures required for competency determination under <u>Ford v. Wainwright</u>); <u>In re Suspension of Capital Unitary Review Act</u>, 722 A.2d 676 (Pa. 1999) (establishing mechanism for review and resolving debate in lower courts); <u>see also State v. Jones</u>, 49 P.3d 273, 284 (Ariz. 2002) (consolidating cases and ordering supplemental briefing and argument on capital sentencing procedures required by <u>Ring v. Arizona</u>, 122 S.Ct. 2428 (2002)); <u>State v. Smith</u>, 2002 WL 1769381, *5 & n.6 (Ariz. July 29, 2002) ("This case ... is but one of many affected

## III.    QUESTIONS THAT THIS COURT SHOULD DECIDE

Defendants, the Commonwealth and the lower courts need this Court's guidance on several unresolved questions about <u>Atkins</u> claims.

### A.    What is the Definition of Mental Retardation?

This Court's guidance is needed on a most basic, primary issue – what definition of "mental retardation" applies to an <u>Atkins</u> claim?  <u>Atkins</u> itself does not provide an absolute definition of "mental retardation," and, instead, says that the states will be given some leeway in defining it. <u>See</u> <u>id.</u>, 122 S.Ct. at 2250.  Of course, this leeway only allows the states to provide <u>greater</u> protection, not less protection, than that afforded by the United States Constitution alone.[9]  Pennsylvania law does not expressly define "mental retardation" for purposes of an <u>Atkins</u> claim because such claims have never before been cognizable in Pennsylvania.

In the absence of a proper, agreed-upon, binding definition of "mental retardation," defendants who may be mentally retarded do not know what facts they need to investigate, develop, and present to the courts to establish an <u>Atkins</u> claim.  Defendants are thus denied the most

---

by the holding in <u>Ring v. Arizona</u>.  We therefore believe it best to consolidate this case and all others not yet final on direct appeal for supplemental briefing and argument on the issues involving capital sentencing procedures. ... The possible application of Ring to cases that are final and that come before our courts on post-conviction matters will be considered separately."); <u>Bottoson v. Moore</u>, 2002 WL 1472231 (Fla. July 8, 2002) (staying execution and ordering briefing and argument on the effect of <u>Ring</u> on Florida's death penalty scheme).

[9] <u>See</u> <u>Ford</u>, 477 U.S. at 428 (O'Connor, J., concurring) (state statute may create liberty interest protected by due process clause); <u>Mills v. Rogers</u>, 457 U.S. 291, 300 (1982) ("Within our federal system the substantive rights provided by the Federal Constitution define only a minimum.  State law may recognize liberty interests more extensive than those independently protected by the Federal Constitution.  <u>See</u> <u>Greenholtz v. Nebraska Penal Inmates</u>, 442 U.S. 1, 7, 12 (1979); <u>Oregon v. Hass</u>, 420 U.S. 714, 719 (1975) .... If so, the broader state protections would define the actual substantive rights possessed by a person living within that State.").

fundamental due process protection – the right to notice of what they must present and prove to show a constitutional violation.[10]  Moreover, presumably, the Commonwealth does not know how to respond to such claims, and the lower courts do not know how to adjudicate them.  This situation is intolerable, especially when the stakes are life and death.  This Court should define "mental retardation" so that Atkins claims can fairly, reliably, rationally and efficiently be presented and decided.

Several different definitions of mental retardation might apply to Atkins claims in Pennsylvania.

Pennsylvania's legislature specifically defined "mental retardation" in the "definitions" section of the Mental Health and Mental Retardation Act of 1966:[11]

> "Mental retardation" means subaverage general intellectual functioning which originates during the developmental period and is associated with impairment of one or more of the following: (1) maturation, (2) learning and (3) social adjustment.

50 P.S. § 4102; see also 62 Pa.C.S. § 520(h) (same definition).

Several sections of Pennsylvania's Administrative Code also define mental retardation.  In most instances, the Administrative Code uses the above-described statutory definition.  E.g.,

---

[10]See Lankford v. Idaho, 500 U.S. 110, 126 & n.22 (1991) ("Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure. ... [O]ur cases have repeatedly emphasized the importance of giving the parties sufficient notice to enable them to identify the issues on which a decision may turn.  In the capital context, in which the threatened loss is so severe, the need for notice is even more pronounced." (citations omitted)); LaChance v. Erickson, 522 U.S. 262, 266 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard." (citing Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542 (1985))).

[11]In 1976, "the Commonwealth enacted the Mental Health Procedures Act ... [which] repealed the 1966 Act with respect to all persons except those who are mentally retarded.  The 1966 Act continued in force for all mentally retarded persons."  Institutionalized Juveniles v. Secretary of Public Welfare, 758 F.2d 897, 904 (3d Cir. 1985).

8

55 Pa. Code §§ 4200.4, 6400.4, 6500.4. One section of the Administrative Code, however, sets forth

the following, much more elaborate, definition:

> The facility shall document the applicant's or recipient's diagnosis of mental
> retardation by meeting the following requirements:
>     (1) A licensed psychologist, certified school psychologist or a licensed
> physician who practices psychiatry shall certify that the applicant or recipient has
> significantly <u>subaverage intellectual functioning</u> which is documented by one of the
> following:
>         (i) Performance that is more than two standard deviations below the
> mean as measurable on a standardized general intelligence test.
>         (ii) Performance that is slightly higher than two standard deviations
> below the mean of a standardized general intelligence test during a period
> when the person manifests serious impairments of adaptive behavior.
>     (2) A qualified mental retardation professional as defined in 42 CFR 483.430
> (relating to condition of participation: facility staffing) shall certify that the applicant
> or recipient has impairments in adaptive behavior as provided by a standardized
> assessment of adaptive functioning which shows that the applicant or recipient has
> one of the following:
>         (i) Significant limitations in meeting the standards of maturation,
> learning, personal independence or social responsibility of his age and
> cultural group.
>         (ii) Substantial functional limitation in three or more of the following
> areas of major life activity:
>             (A) Self-care.
>             (B) Receptive and expressive language.
>             (C) Learning.
>             (D) Mobility.
>             (E) Self-direction.
>             (F) Capacity for independent living.
>             (G) Economic self-sufficiency.
>     (3) It has been certified that documentation to substantiate that the applicant's
> or recipient's conditions were manifest before the applicant's or recipient's 22nd
> birthday, as established in section 102 of the Developmental Disabilities Assistance
> and Bill of Rights Act (42 U.S.C.A. § 6001).

55 Pa. Code § 6210.63.

Other definitions of mental retardation have been suggested by the American Association of

Mental Retardation and the American Psychiatric Association:

9

The American Association of Mental Retardation (AAMR) defines mental retardation as follows: "Mental retardation refers to substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18." MENTAL RETARDATION: DEFINITION, CLASSIFICATION, AND SYSTEMS OF SUPPORTS 5 (9th ed.1992).

The American Psychiatric Association's definition is similar: "The essential feature of Mental Retardation is significantly subaverage general intellectual functioning ... that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety .... The onset must occur before age 18 years .... American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 41 (4th ed. 2000) ["DSM-IV"].

Atkins, 122 S.Ct. at 2245 n.3.[12]

Petitioner submits that the statutory definition of "mental retardation," 50 P.S. § 4102, should control. This is the only statutory definition of mental retardation in Pennsylvania, and it is codified in the "definitions" section of the Mental Health and Mental Retardation Act, which was intended to "establish a comprehensive program" for dealing with mental retardation in this Commonwealth. Commonwealth ex rel. DiEmilio v. Shovlin, 295 A.2d 320, 323 (Pa. 1972); Commonwealth v. Thomas, 435 A.2d 901, 904 (Pa.Super. 1981). Such comprehensive usage strongly suggests the legislative intent that the definition also be used here. Moreover, this statutory definition has the advantage of simplicity when compared with the other definitions. The statutory definition was intended to be applied in a forensic rather than a clinical setting and is phrased in language that a lay

---

[12]The definition in 55 Pa. Code § 6210.63, supra, is a modified hybrid of these definitions.

10

jury can understand and evaluate.[13] This Court should hold that it applies to <u>Atkins</u> claims. But, whatever definition the Court selects, it should clearly state what the definition of mental retardation is for Pennsylvania cases so that defendants, the Commonwealth and the lower courts have guidance on this basic issue.

Petitioner also submits that any definition of mental retardation that is adopted should <u>not</u> require onset before a certain age. This differs slightly from the above definitions.[14]

An "age of onset" requirement may be significant in a clinical setting, but it is <u>irrelevant to the Eighth Amendment considerations</u> of <u>Atkins</u>. <u>Atkins</u>' prohibition on executing mentally retarded persons is based on "the relative culpability of mentally retarded offenders, and the relationship between mental retardation and the penological purposes served by the death penalty." <u>Id.</u>, 122 S.Ct. at 2250. The age of onset of the defendant's impairments is not relevant to these issues, so long as

---

[13]<u>See</u> DSM-IV at xxiii ("When the DSM-IV categories, criteria, and textual descriptions are employed in a forensic setting, there are significant risks that diagnostic information will be misused or misunderstood. These dangers arise because of the imperfect fit between the questions of ultimate concern to the law and the information contained in a clinical diagnosis."); <u>Commonwealth ex rel. Grimes v. Yack</u>, 433 A.2d 1363, 1381 (Pa.Super. 1981) "The interests of a doctor caring for a patient are not always the same as the interests of the law. ... Sometimes this point is made by saying that the law should not be based on a 'medical model.' In the criminal law, for example, a psychiatrist may believe that a defendant should not be held responsible for conduct defined by the law as criminal. 'Responsibility,' however, is not a medical but a legal concept. In deciding whether a defendant should be characterized as 'mentally ill' or as a 'criminal,' the law concerns itself with matters that the doctor does not. What psychiatrists may consider a 'mental disease or defect' for clinical purposes, where their concern is treatment, may or may not be the same as mental disease or defect for the jury's purposes in determining criminal responsibility. <u>McDonald v. United States</u>, 312 F.2d 847, 851 (D.C. Cir. 1962). ... Thus, the medical concept of illness is not the same as the legal and moral concept of culpability.").

[14]<u>Compare</u> 50 P.S. § 4102 ("originates during the developmental period"); 55 Pa. Code §§ 4200.4, 6400.4, 6500.4 (same); 55 Pa. Code § 6210.63(3) ("conditions were manifest before the ... 22nd birthday"); AAMR definition ("manifests before age 18"); APA definition ("onset must occur before age 18 years").

11

the impairments manifested some time before the offense. Thus, the age of onset requirement should not play a role in the definition of mental retardation adopted by this Court.[15]

### B.    Who Makes the Mental Retardation Decision and What Is the Burden of Proof?

This Court should resolve the question of who determines whether a defendant is mentally retarded – is it the jury or a judge? This Court should also determine who bears the burden of proof – is the burden on the defense to prove mental retardation or on the prosecution to disprove it? And this Court should determine the burden itself – is it by a preponderance of the evidence, by clear and convincing evidence, or beyond a reasonable doubt? All of these questions are open in Pennsylvania.

Petitioner submits that United States Supreme Court precedent and Pennsylvania law show that the jury has a significant role to play in the mental retardation decision, and also determine the appropriate burden of proof.

The Sixth Amendment requires that any finding that potentially subjects a defendant to the death penalty must be unanimously made by the jury beyond a reasonable doubt. Ring v. Arizona, 122 S.Ct. 2428, 2439-40 (2002).[16] Under Atkins, a mentally retarded defendant is constitutionally

---

[15] See note 8, supra (clinical definitions may not fit forensic criteria); Ellis & Luckasson, Mentally Retarded Criminal Defendants, 53 Geo. Wash. L. Rev. 414, 422-23 (1985) (cited with approval in Atkins, 122 S.Ct. at 2250 n.24) ("The final requirement of the definition of mental retardation is that the disability must become manifest before the age of eighteen. The origin of this requirement is obscure, and its relevance to criminal justice is limited. If an individual impaired in both intellectual functioning and behavior would otherwise be classified as mentally retarded, it matters little whether the onset of the problem occurred when the person was a child or an adult. The criminal law generally will be concerned with the manifestations and consequences of the individual's handicap and not the date of its origin." (footnote omitted)).

[16] See also id. at 2443 (all "factfinding[s] necessary to ... put [a defendant] to death" must be by unanimous jury beyond a reasonable doubt); id. at 2444 (Scalia, J., concurring) ("all facts

12

ineligible for the death penalty. Since lack of mental retardation is a requirement for eligibility for death, the Sixth Amendment prohibits a death sentence unless the jury finds unanimously beyond a reasonable doubt that the defendant is not mentally retarded. Ring.

Pennsylvania law requires the same result. Under Pennsylvania's capital sentencing statute, the factors that make a defendant death-eligible, the aggravating circumstances codified in 42 Pa.C.S. § 9711(d), must be found beyond a reasonable doubt by the unanimous jury.[17] Lack of mental retardation now joins the statutory aggravating circumstances as a threshold factor for death-eligibility that the jury must unanimously find by proof beyond a reasonable doubt.

Thus, the Sixth Amendment and Pennsylvania's capital sentencing statute do not allow a death sentence unless the jury unanimously finds beyond a reasonable doubt that the defendant is not mentally retarded. This is the only constitutionally appropriate conclusion. The Commonwealth thus must establish lack of mental retardation beyond a reasonable doubt once the defendant sets forth some evidence tending to show mental retardation.

However, the judge still has an important role to play. While the unanimous jury must make the ultimate finding of whether the Commonwealth has proved lack of mental retardation beyond a reasonable doubt, the judge must make a preliminary determination of whether the defendant

---

essential to imposition of the level of punishment that the defendant receives ... must be made by the jury beyond a reasonable doubt").

[17]42 Pa.C.S. § 9711(c)(iii)-(iv); Commonwealth v. Chester, 733 A.2d 1242, 1249 (Pa. 1999) ("Without proof beyond a reasonable doubt that the particular case at issue falls squarely within the class of cases for which death can be imposed, the defendant cannot be subject to the penalty." (citing Commonwealth v. Paolello, 665 A.2d 439, 457 (Pa. 1995))); Commonwealth v. Burgos, 610 A.2d 11, 15 (Pa. 1992) (death sentence vacated where (d)(2) aggravating circumstance "should not have been submitted to the jury because the Commonwealth failed to prove essential elements of [(d)(2)] beyond a reasonable doubt").

should be subjected to capital proceedings in the first place. If the judge determines that the defendant is more likely than not mentally retarded, s\he should not permit the prosecution to proceed as a capital case.

Such a role for the judge is already required in determining a defendant's competency to be subjected to trial. See Cooper v. Oklahoma, 517 U.S. 348 (1996). Furthermore, judicial pre-trial determinations are routinely available in Pennsylvania in determining if the Commonwealth can sustain its burden of proving at least one aggravating circumstance – the other death-eligibility factor – beyond a reasonable doubt. If the judge determines pre-trial that the Commonwealth cannot meet its burden with respect to at least one aggravating circumstance, the defendant is not death-eligible and cannot be subjected to a capital prosecution. See Commonwealth v. Buck, 709 A.2d 892 (Pa. 1998).[18]

Reasons for requiring a distinct, pre-trial judicial determination on these matters are discussed in Jackson v. Denno, 378 U.S. 368 (1964) and Crane v. Kentucky, 476 U.S. 683 (1986). As these cases show, enforcement of a federal constitutional prohibition against exposing retarded persons to a death sentence at the jury's discretion cannot be left solely to a procedure whereby the jury makes the ultimate factual determination of the existence vel non of the facts on which the prohibition turns. Crane, 476 U.S. at 687-88; Jackson, 378 U.S. at 386. There is, in short, a due

---

[18]The judge plays a similar role in many other criminal trial contexts. See, e.g., Commonwealth v. Joyner, 272 A.2d 454, 455 (Pa. 1971) (Pennsylvania "requires the submission of the issue of voluntariness to the jury, even though there has been a ... finding by the trial judge of voluntariness"); Commonwealth v. Camm, 277 A.2d 325, 335 (Pa. 1971) (jury must "find the statement to be voluntary beyond a reasonable doubt before considering it as evidence"); Commonwealth v. Blasioli, 713 A.2d 1117 (Pa. 1998) (judge conducts pre-trial hearing on admissibility of expert opinion; if admissible, jury makes ultimate determinations as to credibility and weight); Commonwealth v. Rodgers, 605 A.2d 1228 (Pa.Super. 1992) (same).

14

process requirement that the trial judge make the initial determination of whether the defendant's constitutional rights are violated. This is especially true here because <u>Atkins</u>' constitutional prohibition is based in part on recognition of the handicaps that retarded persons suffer in litigating issues in front of juries, which in turn exposes them to "a special risk of wrongful execution."[19]

Thus, at trial, this Court should hold that the Sixth Amendment, due process and Pennsylvania law all require that the mental retardation issue be decided in a two-step process:

First, the judge must make a judicial determination whether the defendant has proffered some evidence tending to show mental retardation, and, thus, whether the defendant is eligible for a death sentence. If the judge determines that the defendant is mentally retarded, the case cannot proceed as a capital prosecution.

Second, if the judge does not find that the defendant is mentally retarded, the case may proceed as a capital prosecution but a defendant who presents evidence of mental retardation has a right to insist that s\he not be sentenced to death unless the jury finds unanimously, beyond a reasonable doubt, that he is not mentally retarded.

This Court should also establish constitutionally appropriate procedures for handling post-conviction cases in light of <u>Atkins</u>, <u>Ring</u> and the other above-described considerations. The above-described procedures are relevant to this Court's determination, since they describe the rights that post-conviction petitioners were denied at trial. Post-conviction petitioners should have the same rights with regard to these matters as they would have had if they had been provided these

---

[19]<u>Atkins</u>, 122 S.Ct. at 2252 (noting difficulty mentally retarded persons have in testifying; risk that "demeanor may create an unwarranted impression of lack of remorse"; and risk that mental retardation evidence may make defendant appear dangerous).

protections at trial. See Fleming v. Zant, 386 S.E.2d 339, 342-43 (Ga. 1989) (where execution of mentally retarded held to violate state constitution, post-conviction petitioners entitled to same procedural protections as those given at trial).

The appropriate procedure in post-conviction, like that at trial, is a two-step process. In cases in which evidence of mental retardation was presented and not contested at trial, or in post-conviction proceedings, or is otherwise clear from the record, the remedy is simple: the death sentence should be modified to a sentence of life imprisonment. This is not only a matter of common sense, but is also in accord with the established practice in other analogous situations.[20]

In cases where there is a reasonable dispute about the evidence, the appropriate remedy is a new capital sentencing hearing at which the Commonwealth must convince a unanimous jury, by proof beyond a reasonable doubt, that the defendant is not mentally retarded. A jury cannot be

---

[20]E.g., 42 Pa.C.S. § 9711(h)(4) ("If the Supreme Court determines that the death penalty must be vacated because none of the aggravating circumstances are supported by sufficient evidence, then it shall remand for the imposition of a life imprisonment sentence."); Commonwealth v. Mayhue, 639 A.2d 421, 440 (Pa. 1994) (vacating death sentence and remanding for imposition of life sentence where defendant not death-eligible because no valid aggravating circumstances); Commonwealth v. Story, 440 A.2d 488, 491 (Pa. 1981) ("On every occasion where the conviction has been found to be valid, an appellant facing a death sentence imposed pursuant to an unconstitutional death penalty statute has received a sentence of life imprisonment. This is so whether or not the appellant has requested relief from the death sentence." (footnote omitted, citing McKenna, supra)); id. at 492 ("Where, as here, the sentence of death was improperly put before the sentencing jury ... the sentence of death must be vacated and a sentence of life imprisonment imposed."); Commonwealth v. Crenshaw, 470 A.2d 451 (Pa. 1983) (vacating death sentence and imposing life sentence where defendant was sentenced to death under statute enacted after offense); Commonwealth v. Bighum, 307 A.2d 255, 264 (Pa. 1973) (vacating death sentence and imposing life sentence where defendant was sentenced to death under unconstitutional statute); Commonwealth v. Scoggins, 304 A.2d 102, 108 (Pa. 1973) (same); Commonwealth v. Raymond, 304 A.2d 146, 149 (Pa. 1973) (same); Commonwealth v. Lopinson, 296 A.2d 524 (Pa. 1972) (same); Flowers v. State, 586 So.2d 978 (Ala. Crim.App. 1991) (vacating death sentence and imposing life sentence under Thompson v. Oklahoma, 487 U.S. 815 (1988), where it was undisputed that defendant was 15 years old at time of offense); State v. Stone, 535 So.2d 362 (La. 1988) (same).

impaneled to decide the mental retardation issue in isolation. Instead, the only remedy consistent with both Atkins and Ring is for a new, properly instructed and guided jury to decide both eligibility for the death penalty, as well as its appropriateness, in light of all the relevant evidence. Even if the jury decides that the defendant is not mentally retarded, and thus is death-eligible, one or more jurors may well decide that the defendant's diminished intellectual capacity is sufficiently mitigating to warrant a life sentence.[21] Knowing that mental retardation makes the defendant absolutely ineligible for death necessarily heightens the mitigating effect of a decision that the defendant falls just over the line into the "borderline" range of intellectual functioning.[22] Thus, a new sentencing hearing at which the jurors have the opportunity to decide whether the defendant is death-eligible and, if so, whether death is the appropriate punishment, is the only remedy that will permit full consideration of mental retardation.

Thus, the appropriate remedy where the Atkins claim is raised in post-conviction proceedings is also a two-step process, once the defendant asserts that s\he suffers from mental retardation. First, if the evidence of mental retardation was not disputed or is otherwise clear from the record, the post-conviction court should vacate the death sentence and impose a sentence of life imprisonment. Second, if there is any dispute about the evidence of mental retardation, the petitioner should receive

---

[21]See Williams v. Taylor, 529 U.S. 362, 397 (2000) (counsel ineffective for failing to present evidence that the defendant was "borderline mentally retarded"); id. at 398 ("Mitigating evidence unrelated to [death-eligibility] may alter the jury's selection of penalty, even if it does not undermine or rebut the prosecution's death-eligibility case").

[22]Cf. Eddings v. Oklahoma, 458 U.S. 104, 116 (1982) (not reaching question of whether Eighth Amendment absolutely prohibits execution of 16 year old because sentence had to be vacated on grounds that the sentencer did not give proper mitigating effect to defendant's youth, "a relevant mitigating factor of great weight").

a new capital sentencing hearing at which he presents the evidence of mental retardation, along with all mitigating evidence; the jury is instructed that the petitioner must be sentenced to life imprisonment unless it finds beyond a reasonable doubt that he is not mentally retarded; and the jury is otherwise instructed about aggravating and mitigating circumstances in accordance with Pennsylvania's capital sentencing statute and any applicable constitutional principles.

**C.      Are <u>Atkins</u> Claims Cognizable under the Post Conviction Relief Act?**

Guidance from this Court is also needed on several issues related to the cognizability of <u>Atkins</u> claims under the Post Conviction Relief Act ("PCRA"). This Court has repeatedly stressed that a post-conviction petitioner needs to plead and prove that he is entitled to relief under the PCRA's statutory provisions.[23] Because <u>Atkins</u> claims present several unusual and novel questions about these matters, PCRA litigants and the lower courts need this Court's guidance on several questions.

**1.      Does <u>Atkins</u> error "so undermine[] the truth-determining process that no reliable adjudication of guilt or innocence could have taken place"?**

To show entitlement to relief under § 9543(a)(2)(i) of the PCRA, a PCRA petitioner must show that the "sentence resulted from ... [a] violation of ... the Constitution ... of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Clearly, <u>Atkins</u> error is a "violation of ... the Constitution ... of the United States." Recent decisions by this Court, however, make unclear the interplay between <u>Atkins</u> error and errors that "so undermined the truth-

---

[23]E.g., <u>Commonwealth v. Lambert</u>, 797 A.2d 232, 238 (Pa. 2001); <u>Commonwealth v. Pierce</u>, 786 A.2d 203, 212 (Pa. 2001); <u>Commonwealth v. Rivers</u>, 786 A.2d 923, 925-27 (Pa. 2001); <u>Commonwealth v. Williams</u>, 782 A.2d 517, 526 (Pa. 2001).

determining process that no reliable adjudication of guilt or innocence could have taken place." <u>See</u>, <u>e.g.</u>, <u>Commonwealth v. Rivers</u>, 786 A.2d 923 (Pa. 2001). What are the lower courts to do and how do they apply the PCRA to an <u>Atkins</u> claim?

Petitioner submits that a death sentence tainted by such fundamental constitutional error cannot be deemed constitutionally "reliable." <u>See Atkins</u>, 122 S.Ct. at 2244 ("[T]heir impairments can jeopardize the reliability and fairness of capital proceedings against mentally retarded defendants."); <u>id.</u> at 2251-52 ("The reduced capacity of mentally retarded offenders provides a second justification for a categorical rule making such offenders ineligible for the death penalty. The risk 'that the death penalty will be imposed in spite of factors which may call for a less severe penalty,' <u>Lockett v. Ohio</u>, 438 U.S. 586, 605 (1978), is enhanced, not only by the possibility of false confessions, but also by the lesser ability of mentally retarded defendants to make a persuasive showing of mitigation in the face of prosecutorial evidence of one or more aggravating factors. Mentally retarded defendants may be less able to give meaningful assistance to their counsel and are typically poor witnesses, and their demeanor may create an unwarranted impression of lack of remorse for their crimes. ... Mentally retarded defendants in the aggregate face a special risk of wrongful execution." (footnote omitted)).

This Court should rule that <u>Atkins</u> claims are cognizable under § 9543(a)(2)(i).

### 2.    Does <u>Atkins</u> error result in "[t]he imposition of a sentence greater than the lawful maximum"?

To show entitlement to relief under § 9543(a)(2)(vii) of the PCRA, a PCRA petitioner must show that the "sentence resulted from ... [t]he imposition of a sentence greater than the lawful maximum." Petitioner submits that <u>Atkins</u> claims satisfy this requirement because the "lawful

maximum" sentence for a mentally retarded defendant is life imprisonment, but this Court has never

so-held. This Court should rule that <u>Atkins</u> claims are cognizable under § 9543(a)(2)(vii).

3.    **Can an <u>Atkins</u> claim be deemed "waived"?**

Section 9543(a)(3) of the PCRA requires the petitioner to show that the "allegation of error

has not been ... waived." Under section 9544(b) of the PCRA, "an issue is waived if the petitioner

could have raised it but failed to do so before trial, at trial, ... on appeal or in a prior state

postconviction proceeding." When applied to <u>Atkins</u> claims, sections 9543(a)(3) and 9544(b) raise

important issues that this Court has not previously addressed. This Court should hold that <u>Atkins</u>

claims cannot be deemed "waived" under the PCRA, for several reasons.

The first issue this Court should resolve is whether an <u>Atkins</u> claim is a claim that the

petitioner "could have raised," § 9544(b), in a prior, pre-<u>Atkins</u> proceeding. Before <u>Atkins</u> was

decided, an <u>Atkins</u> claim was not available to any death row prisoner, as a matter of law.[24] The

previous unavailability of <u>Atkins</u> claims is shown by the fact that there are <u>no published opinions</u>

in Pennsylvania capital cases suggesting that anyone has <u>ever</u> raised a claim that it is

unconstitutional to execute mentally retarded people. Under these circumstances, this Court should

rule that an <u>Atkins</u> claim is <u>not</u> a claim that the "petitioner could have raised" in prior proceedings

---

[24]<u>See</u>, <u>e.g.</u>, <u>Penry</u>, 492 U.S. at 331-40 (Eighth Amendment does <u>not</u> prohibit death sentence and execution of mentally retarded); <u>Commonwealth v. Graves</u>, 147 A.2d 416, 418 (Pa. 1959) ("The cases are definitive that the Court is not required as a matter of law to reduce a sentence from death to life imprisonment merely because the defendant was unstable and either a moron or a mental defective."); <u>Commonwealth v. Miller</u>, 746 A.2d 592, 599 n.6 (Pa. 2000) (upholding death sentence of mentally retarded defendant); <u>Commonwealth v. Jacobs</u>, 727 A.2d 545, 550 (Pa. 1999) (same); <u>Commonwealth v. Rompilla</u>, 721 A.2d 786, 789 (Pa. 1999) (same); <u>Commonwealth v. Gibson</u>, 720 A.2d 473, 478 (Pa. 1998) (same); <u>Commonwealth v. Karenbauer</u>, 715 A.2d 1086, 1091 (Pa. 1998) (same); <u>Commonwealth v. Miller</u>, 664 A.2d 1310, 1314 (Pa. 1995) (same).

and, accordingly, cannot be deemed waived under the PCRA. It would be utterly unfair to hold otherwise.[25]

Several other issues about waiver should also be decided by this Court.

First, this Court should rule that <u>Atkins</u> claims cannot be deemed waived because the death penalty is illegal for a mentally retarded defendant and "claims concerning the illegality of the sentence are not waivable."[26]

Second, this Court should rule that <u>Atkins</u> claims cannot be deemed waived because allowing the execution of a mentally retarded person would constitute a "miscarriage of justice ... which no civilized society could tolerate," <u>Commonwealth v. Morales</u>, 701 A.2d 516, 521 (Pa. 1997), thus overcoming waiver.[27]

---

[25]<u>See</u> <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984) ("[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." "Raising such a claim ... would not promote either the fairness or the efficiency of the state criminal justice system.").

[26]<u>Commonwealth v. Vasquez</u>, 744 A.2d 1280, 1284 (Pa. 2000); <u>accord</u> <u>Commonwealth v. Andrews</u>, 768 A.2d 309, 312 (Pa. 2001); <u>Commonwealth v. Shannon</u>, 608 A.2d 1020, 1024 (Pa. 1992); <u>Commonwealth v. Smith</u>, 598 A.2d 268, 270 (Pa. 1991); <u>Commonwealth v. Norris</u>, 446 A.2d 246, 251 n.9 (Pa. 1982); <u>Commonwealth v. Walker</u>, 362 A.2d 227, 230 (Pa. 1976); <u>Commonwealth v. Williams</u>, 660 A.2d 614, 618 (Pa.Super. 1995); <u>Commonwealth v. Anderson</u>, 643 A.2d 109, 111 (Pa.Super. 1994); <u>Commonwealth v. Quinlan</u>, 639 A.2d 1235, 1238 (Pa.Super. 1994); <u>Commonwealth v. Green</u>, 593 A.2d 899, 900 n.1 (Pa.Super. 1991); <u>Commonwealth v. O'Neil</u>, 573 A.2d 1112, 1114 (Pa.Super. 1990); <u>Commonwealth v. Carr</u>, 543 A.2d 1232, 1234 (Pa.Super. 1988); <u>Commonwealth v. Howard</u>, 540 A.2d 960, 961 (Pa.Super. 1988); <u>Commonwealth v. Campbell</u>, 505 A.2d 262, 265 (Pa.Super. 1986); <u>Commonwealth v. Irving</u>, 500 A.2d 868, 872 (Pa.Super. 1985); <u>Commonwealth v. Neidig</u>, 489 A.2d 921, 924-25 (Pa.Super. 1985); <u>Commonwealth v. Padden</u>, 483 A.2d 950, 951 (Pa.Super. 1984); <u>Commonwealth v. Mitchell</u>, 465 A.2d 1284, 1287-88 (Pa.Super. 1983); <u>Commonwealth v. Ford</u>, 461 A.2d 1281, 1289 (Pa.Super. 1983); <u>Commonwealth v. Thomas</u>, 435 A.2d 901, 903 (Pa.Super. 1981); <u>Commonwealth v. Welch</u>, 435 A.2d 189, 189 (Pa.Super. 1981).

[27]<u>See</u> <u>Atkins</u>, 122 S.Ct. at 2247 (execution of mentally retarded violates "evolving standards of decency that mark the progress of a maturing society"); <u>Estelle v. Gamble</u>, 429 U.S. 97, 102

Third, this Court should rule that <u>Atkins</u> claims cannot be deemed waived because of the non-waiver principles this Court described in<u>Commonwealth v. McKenna</u>, 383 A.2d 174 (Pa. 1978), which held that waiver will not be allowed "where a finding of waiver will result in the imposition of a sentence of death by the Commonwealth of Pennsylvania in a manner clearly contrary to the express law of the land." <u>Id.</u> at 180; <u>see</u> <u>also</u> <u>id.</u> at 181 ("overwhelming public interest" in constitutional application of death sentence creates "duty to transcend procedural rules ... to the end that the public interest may be vindicated").

The reach of <u>McKenna</u>'s no-waiver rule was limited by <u>Commonwealth v. Albrecht</u>, 720 A.2d 693 (Pa. 1998) (court will no longer apply <u>McKenna</u>'s capital case relaxed waiver rule in PCRA appeals). <u>McKenna</u>'s no-waiver rule, however, remains viable in those "'occasional rare situations,' [where] the interests of society as a whole in seeing justice done outweigh[] the doctrine" of waiver. <u>Commonwealth v. Bracey</u>, 795 A.2d 935, 953 (Pa. 2002) (Castille, J., concurring) (quoting <u>McKenna</u>). This Court should hold that this is one of those "rare situations," since allowing the execution of a mentally retarded person offends the "standards of decency that mark the progress of a maturing society," and would not serve the interests of deterrence or retribution. <u>Atkins</u>, 122 S.Ct. at 2247, 2251.

> **4.    Could the "failure to litigate the [<u>Atkins</u>] issue prior to or during trial, ... or on direct appeal ... have been the result of any rational, strategic or tactical decision by counsel"?**

Under section 9543(a)(4) of the PCRA, the petitioner must show that "failure to litigate the issue prior to or during trial, ... or on direct appeal could not have been the result of any rational,

---

(1976) (Eighth Amendment prohibition on cruel and unusual punishments "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency").

strategic or tactical decision by counsel." For Atkins claims, this section presents a potentially dispositive question of statutory interpretation. This Court should provide guidance, so that litigants and the lower courts know if Atkins claims are cognizable under the PCRA.

In a sense, failure to present an Atkins claim in any proceeding held before Atkins clearly could have been a "rational, strategic or tactical decision by counsel" – counsel could have made a rational decision to not present the claim because the claim was unavailable as a matter of constitutional law. If section 9543(a)(4) is interpreted in this way, Atkins claims are not cognizable under the PCRA.

Petitioner submits, however, that section 9543(a)(4) should not be so interpreted. It would not be fair to hold that a claim is not cognizable under the PCRA because it was not raised during a prior proceeding at a time when it was not a valid claim. This Court should hold that failure to previously raise an Atkins claim arose from its previous unavailability, rather than from a "rational, strategic or tactical decision by counsel."[28]

## 5.    Does Atkins "apply retroactively"?

Prisoners who are raising Atkins claims in second or successive PCRA petitions may have to demonstrate that Atkins announced "a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively." 42 Pa.C.S. § 9545(b)(1)(iii). Prisoners raising an Atkins claim in a first PCRA petition may also have to establish its retroactive

---

[28]See Reed v. Ross, 468 U.S. at 14-15 ("If counsel has no reasonable basis upon which to formulate a constitutional question, ... it is safe to assume that he is sufficiently unaware of the question's latent existence that we cannot attribute to him strategic motives of any sort.").

application. E.g., Commonwealth v. Jermyn, 709 A.2d 849, 869 (Pa. 1998). It is clear that Atkins announced a new rule of constitutional law. Under United States Supreme Court precedent, Atkins applies retroactively under federal standards. See Penry, 492 U.S. at 329-30 (ban on execution of mentally retarded satisfies first Teague v. Lane, 489 U.S. 288 (1989) non-retroactivity exception).

However, this Court's retroactivity jurisprudence raises questions about whether this Court will deem Atkins retroactively applicable. This Court has held that "even a case which breaks with past precedent that is given a fully retroactive effect is not applied to any case on collateral review unless the decision announcing the new rule of law was handed down during the pendency of the defendant's direct appeal and the issue was properly preserved on direct appeal." Commonwealth v. Todaro, 701 A.2d 1343, 1348 (Pa. 1997).[29] Under this statement of retroactivity law, which Petitioner submits is contrary to federal law, see, Penry, supra, Atkins does not apply to anyone now in post-conviction proceedings because it was not decided during their direct appeals and because no one in Pennsylvania "preserved" an Atkins claim before Atkins was decided.

This Court should state which body of retroactivity law controls here.

### D.    Does Atkins give trial courts jurisdiction to correct an illegal sentence?

This Court should hold that Pennsylvania's Courts of Common Pleas have jurisdiction to consider Atkins claims even if those claims do not meet the above-described PCRA cognizability, retroactivity and jurisdictional requirements. This Court has repeatedly held that "[t]rial courts never

---

[29]Accord Commonwealth v. Bracey, 795 A.2d 935, 939 n.3 (Pa. 2001); Commonwealth v. Tilley, 780 A.2d 649, 652 (Pa. 2001); Jermyn, 709 A.2d at 869; Commonwealth v. Szuchon, 693 A.2d 959, 962 (Pa. 1997); Commonwealth v. Christy, 656 A.2d 877, 889 (Pa. 1995); Commonwealth v. Peterkin, 649 A.2d 121, 126 n.4 (Pa. 1994); Commonwealth v. Gillespie, 516 A.2d 1180, 1183 (Pa. 1986).

24

relinquish their jurisdiction to correct an illegal sentence."[30]  A death sentence imposed in violation of <u>Atkins</u> is illegal – life imprisonment is the maximum allowable sentence for a mentally retarded person.  Thus, the trial courts of this Commonwealth "never relinquish their jurisdiction to correct" a death sentence that violates <u>Atkins</u>.

### E.    Are <u>Atkins</u> Claims Cognizable under the State Writ of Habeas Corpus?

Petitioner submits that <u>Atkins</u> claims are cognizable under Pennsylvania's writ of habeas corpus.  This Court should hold that <u>Atkins</u> claims are cognizable under the state writ of habeas corpus, which is guaranteed by Article I, § 14 of the Pennsylvania Constitution.[31]

_____

[30]<u>Vasquez</u>, 744 A.2d at 1284 (citing <u>Commonwealth v. Jones</u>, 554 A.2d 50, 52 (Pa. 1989); <u>Commonwealth v. Kunish</u>, 602 A.2d 849, 851 (Pa. 1992)); <u>accord</u> <u>Andrews</u>, 768 A.2d at 312 ("[A] challenge to the legality of a sentence may be raised at any time."); <u>see also</u> <u>McKenna</u>, 383 A.2d at 183 (Nix, J., concurring) ("[I]t would be repugnant to any fair system of jurisprudence to ... permit a court to impose a sanction ... that exceeds that tribunal's authority. ... For this Court to acquiesce in such an act would constitute a flagrant disregard of the supervisory powers invested in us by the Constitution of this Commonwealth.").

[31]<u>See</u> <u>Commonwealth v. Peterkin</u>, 722 A.2d 638, 640-41 (Pa. 1998) (state writ of habeas corpus "continue[s] to exist as a separate remedy" from those available under PCRA; where PCRA remedy is not available, habeas corpus is); <u>Commonwealth ex rel. Paulinski v. Isaac</u>, 397 A.2d 760, 763 (Pa. 1979) ("our concept of ordered law demands that a means of relief be available to relators unlawfully in custody"); <u>Commonwealth ex rel. Swann v. Shovlin</u>, 223 A.2d 1, 5 (Pa. 1966) ("the Legislature may not encumber access to habeas corpus in a fashion which results in a 'practical deprivation' of that right"); <u>Commonwealth ex rel. Stevens v. Myers</u>, 213 A.2d 613, 622-24 (Pa. 1965) (ultimate power of molding writ of habeas corpus lies solely with judiciary, not legislature); <u>Stander v. Kelley</u>, 250 A.2d 474 (Pa. 1969) (Roberts, J., joined by Jones & Pomeroy, JJ., concurring) (same); <u>Commonwealth ex rel. Levine v. Fair</u>, 146 A.2d 834, 846 (Pa. 1959) ("[R]elief from illegal restraint is not limited to cases falling within the scope of the criminal code. ... The writ of habeas corpus ... [is] a common-law power, not created by [any post-conviction statute], but existing before and since the passage of that act in every court of record ... [and] it is always grantable."); <u>Commonwealth ex rel. Elliot v. Baldi</u>, 96 A.2d 122, 124-25 (Pa. 1953) ("It must be obvious, as well as just, that petitioner should have some redress if he was sentenced under either a mistake of law or a mistake of important  material facts which were discovered after sentence and could not by reasonable  diligence have been discovered before sentence.  His only possible remedy under such facts is either a writ of habeas corpus or a writ of coram nobis.  Habeas corpus lies to correct void or

The propriety of habeas corpus remedies, even if PCRA or other remedies are not available, is especially clear because of the nature of the right announced in <u>Atkins</u>. <u>Atkins</u> does not just prohibit sentencing a mentally retarded defendant to death. In addition, <u>Atkins</u>, like <u>Ford v. Wainwright</u>, 477 U.S. 399, 405 (1986), also "'places a substantive restriction on the State's power to take the life' of a mentally retarded offender." <u>Atkins</u>, 122 S.Ct. at 2252 (quoting <u>Ford</u>, 477 U.S. at 405).

Thus, <u>Atkins</u>, like <u>Ford</u>, bars the state from carrying out the execution of a mentally retarded prisoner even if there were no constitutional errors in the proceedings that led to the imposition of that sentence; and an <u>Atkins</u> claim, like a <u>Ford</u> claim, need not be brought under the PCRA at all. E.g., <u>In re Heidnik</u>, 720 A.2d 1016 (Pa. 1998) (<u>Ford</u> claim need not be brought under PCRA); <u>Commonwealth v. Jermyn</u>, 709 A.2d 849, 851-55 (Pa. 1998) (same); <u>Commonwealth v. Jermyn</u>,

---

illegal sentences or an illegal detention, [citing cases], and where the record shows a trial or sentence or plea which was so fundamentally unfair as to amount to a denial of due process or other constitutional rights of the accused, habeas corpus will lie, [citing cases]. In the light of these decisions, we hold that habeas corpus will lie, if the Court has imposed a sentence on the basis of facts or assumptions concerning defendant's criminal or psychiatric or psychological record which were materially untrue ... and which defendant had no reasonable means or opportunity to call to the Court's attention."); <u>Williamson v. Lewis</u>, 39 Pa. 9, 29 (1861) (habeas corpus "may issue in all sorts of cases where it is shown to the court that there is probable cause for believing that a person is restrained of his liberty unlawfully or against the due course of law"); <u>Commonwealth ex rel. Webster v. Fox</u>, 7 Pa. 336, 338 (1847) ("no matter where or how the chains of his captivity were forged -- the power of the judiciary in this state is adequate to crumble them to dust, if an individual is deprived of his liberty contrary to the law of the land"); <u>Commonwealth ex rel. Wardrop v. Warden</u>, 352 A.2d 88, 89 (Pa.Super. 1975) (despite language in Post Conviction Hearing Act that Act encompassed habeas corpus, the Act does not abrogate the remedy of habeas corpus, but merely establishes a defined procedure and "the Remedy of habeas corpus remains"); <u>Commonwealth v. Maute</u>, 397 A.2d 826, 829 (Pa.Super. 1979) (all claims previously cognizable by writ of habeas corpus, but not encompassed by PCHA, may still be litigated by their common law actions); <u>Burkett v. Love</u>, 89 F.3d 135, 141 (3d Cir. 1996) (even if claim not cognizable under PCRA, Pennsylvania would permit habeas corpus action because of Pennsylvania Constitutional provision prohibiting impairment of that right).

652 A.2d 821, 822-24 (Pa. 1995) (same).  This Court should hold the writ of habeas corpus a viable

remedy for Atkins claims.

## IV.    THIS COURT SHOULD EXERCISE ITS KING'S BENCH JURISDICTION, 42 Pa.C.S. § 726, TO REVIEW AND DECIDE THESE IMPORTANT ISSUES

This court should exercise its Kings Bench jurisdiction, 42 Pa.C.S. § 726, to decide these

important matters.[32]  In matters "of immediate public importance," § 726, this Court often finds it

"appropriate to assume jurisdiction under section 726 in order to conserve judicial resources,

expedite the proceedings and provide guidance to the lower courts on a question that is likely to

recur."[33]  Here, all of these factors show that this Court should hear and decide this case.

---

[32]See 42 Pa.C.S. § 726 ("Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court ... of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done."); Pa. Const. Art. V, § 10(a)("The Supreme Court shall exercise general supervisory and administrative authority over all the courts."); 42 Pa.C.S. § 502 ("The Supreme Court shall have and exercise the powers vested in it by the Constitution of Pennsylvania, including the power generally to minister justice to all persons and to exercise the powers of the court, as fully and amply, to all intents and purposes, as the justices of the Court of King's Bench, Common Pleas and Exchequer, at Westminster, or any of them, could or might do on May 22, 1722.  The Supreme Court shall also have and exercise the following powers:  (1) All powers necessary or appropriate in aid of its original and appellate jurisdiction which are agreeable to the usages and principles of law. (2) The powers vested in it by statute, including the provision of this title."); Pa.R.A.P. 3309.

[33]Commonwealth v. Morris, 771 A.2d 721, 731 (Pa. 2001) (exercising § 726 jurisdiction to decide proper interpretation of PCRA's stay of execution provisions (citing Commonwealth v. Martorano, 634 A.2d 1063, 1073, n.6 (Pa. 1993))); Commonwealth v. Lang, 537 A.2d 1361, 1363 n.1 (Pa. 1988) (taking King's Bench jurisdiction to determine whether grand jury could investigate defendant even after he had been charged with a crime; exercising King's Bench jurisdiction "in order to conserve judicial resources, speed the criminal trial in this case, and provide guidance for the lower courts as to a question that is likely to recur"); Commonwealth ex rel. Colville v. Laffey, 402 A.2d 994 (Pa. 1979) (exercising § 726 jurisdiction to resolve pre-trial dispute "and to assure the orderly disposition of pending criminal charges."); In re Dwyer, 406 A.2d 1355 (Pa. 1979) (taking extraordinary and King's Bench jurisdiction to grant members of the Bureau of Industrial Safety quasi-judicial immunity); Deer Creek Drainage Basin Authority v. County Board of Elections, 381

27

**A.    This case involves issues of "immediate public importance."**

This case involves issues of "immediate public importance," as required by section 726. Indeed, this Court has found an "overwhelming public interest" in fair and constitutional administration of the death penalty in this Commonwealth. McKenna, 383 A.2d at 180.[34]

**B.    A decision by this Court will "conserve judicial resources, expedite the proceedings and provide guidance to the lower courts on a question that is likely to recur."**

In order to protect the their client's rights, undersigned counsel have filed or are about to file in the various courts of common pleas petitions raising Atkins claims for several Pennsylvania death row prisoners. Counsel assume that other lawyers have filed or are about to file similar petitions on behalf of their clients. As described above, Pennsylvania now has no well-defined mechanism for presenting and litigating these claims. Without guidance from this Court, the lower court litigation will no doubt result in numerous inconsistent decisions, all of which will require this Court's eventual review and some of which may result in reversals. Under these circumstances, it is clear that this Court's review of these matters now will "conserve judicial resources, expedite the proceedings and provide guidance to the lower courts on a question that is likely to recur." Morris.

---

A.2d 103 (Pa. 1977) (exercising plenary jurisdiction and granting injunction to resolve dispute over ordinance on ballot); Allegheny County v. Commonwealth, 534 A.2d 760, 764 (Pa. 1987) (exercising King's Bench powers to order funding of unified judicial system).

[34]See also Morris, 771 A.2d at 731 (§ 726 jurisdiction to decide proper interpretation of PCRA's stay of execution provisions for successive petitions); Martorano, 634 A.2d at 1067 n.6 (review of bail orders in capital cases); Tilley, 780 A.2d at 652 n.6 (Commonwealth urged § 726 jurisdiction to review PCRA discovery order in capital case).

## V.    CONCLUSION AND PRAYER FOR RELIEF

For all of above reasons, this Court should exercise its jurisdiction and decide these important issues.

Respectfully submitted,

Robert Brett Dunham
Attorney I.D. #56422
Billy Nolas
Attorney I.D. # 83177
James Moreno
Attorney I.D. #86838
Ellen B. Berkowitz
Attorney I.D. #80186
Defender Association of Philadelphia
Suite 545 West – The Curtis Building
Independence Square West
Philadelphia, PA 19106
215-928-0520

Dated: August 16, 2002

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of August, 2002, I served the above Petition for Writ of Habeas Corpus and Application for Leave to File Original Process upon the following person by first-class mail, postage prepaid:

Catherine Marshall, Esq.
Assistant District Attorney
1421 Arch Street
Philadelphia, PA 19102

Randall N. Sears, Esquire
Deputy Chief Counsel of Administration
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011

Jeffrey A. Beard, Secretary
Pennsylvania Department of Corrections
P.O. Box 598
Camp Hill, PA 17001

Michael Fisher
Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120


James Moreno, Esquire

## DECLARATION/AFFIDAVIT OF JAMES MORENO, ESQ.
## PURSUANT TO 28 U.S.C. § 1746 AND 18 Pa.C.S. § 4904

1.      My name is James Moreno. I am an attorney. I, along with Robert Dunham, Billy

Nolas and Ellen Berkowitz, represent Edward Bracey, whose case is pending in federal habeas

corpus proceedings in the United States District Court for the Eastern District of Pennsylvania, No.

02-3685.

2.      There is evidence in the case that Mr. Bracey suffers from mental retardation. As the

accompanying petition indicates, the United States Supreme Court held in Atkins v. Virginia, 122

S.Ct. 2242 (2002), that the Eighth Amendment forbids the execution of people who suffer from

mental retardation. When there is evidence that a death-sentenced defendant suffers from mental

retardation, either the death sentence must be vacated and a life sentence imposed, or the defendant

must be afforded a new sentencing hearing at which a jury can consider the mental retardation

evidence. See accompanying petition's discussion of Ring v. Arizona, 122 S.Ct. 2428 (2002). The

remedy for Mr. Bracey, therefore, should be either a life sentence or, at a minimum, a new

sentencing hearing before a jury.

3.      The Pennsylvania Supreme Court has not issued any decisions addressing how Atkins

should be applied in Pennsylvania. Nor has Pennsylvania's legislature specifically established a

statutory framework for the litigation of Atkins claims. As a result, even though this is a case with

evidence of mental retardation, I do not know what should be pled and presented to establish the

claim under Pennsylvania law.

4.      Based upon the evidence about him, Mr. Bracey meets the definitions of mental

retardation generally suggested by Pennsylvania law, 50 P.S. § 4102, and Atkins. He suffers from

significantly subaverage intellectual functioning accompanied by significant limitations and

impairments in adaptive functioning, including communication, self-care, maturation, social/interpersonal skills and adjustment, home living, learning and functional academic skills, use of community resources, self-direction, work, leisure, health, and safety; and these problems manifested before age eighteen.

5.    For example, records, family accounts, and professional evaluations show that Mr. Bracey's intellectual deficits and adaptive deficits are both long standing and severe. Testing indicates that Mr. Bracey has never functioned at level higher than that of a fourteen year old child. Records indicate that Mr. Bracey's intellectual functioning was tested in the subaverage range of intelligence as early as age eleven years old. Additionally, neuropsychological testing of Mr. Bracey by Dr. Harry Krop, Ph.D., revealed severely impaired reasoning and a chronic pattern of cognitive impairment from a very young age. Moreover, Mr. Bracey exhibited adaptive deficits throughout his life consistent with his subaverage intellectual functioning. For example, he did not meet normal childhood developmental milestones such as walking or acquiring language. Mr. Bracey did not learn to string words together in a sentence until he was four years old, had terrible difficulty reading throughout his life, suffered from severe memory lapses and has consistently exhibited an inability to understand even simple conversation and instruction.

6.    Because neither the Pennsylvania Supreme Court nor the Pennsylvania legislature have described the procedures and standards for litigating Atkins claims in Pennsylvania, it is unclear what facts should be pled or what Mr. Bracey needs to establish in order to make out this claim.

7.    A petition has been filed in the Pennsylvania Supreme Court seeking that Court's guidance on these issues. Given his history, I am confident that Mr. Bracey shall be able to meet the

2

standard for pleading and proof when it is established by the Pennsylvania Supreme Court. I respectfully request a status with the Court where this matter can be discussed.

8.    I hereby certify that the facts set forth above are a true and correct to the best of my personal knowledge, information and belief, subject to 28 U.S.C. § 1746 and 18 Pa.C.S. § 4904.

JAMES MORENO, ESQ.

Dated: 8/15/02

3